# NEW YORK, LAKE ERIE & WESTERN RAILROAD COMPANY *v.* PENNSYLVANIA.

ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 263.   Argued April 5, 1895. — Decided May 27, 1895.

A statute of Pennsylvania imposing a tax upon the tolls received by the New York, Lake Erie and Western Railroad Company from other railroad companies, for the use by them respectively of so much of its railroad and tracks as lies in the State of Pennsylvania, for the passage over them of trains owned and hauled by such companies respectively, is a valid tax, and is not in conflict with the interstate commerce clause of the Constitution when applied to goods so transported from without the State of Pennsylvania.

THE New York, Lake Erie and Western Railroad Company, a corporation of the State of New York, doing business in the State of Pennsylvania, appealed from a settlement of account made by the Auditor General of the latter State, assessing

certain taxes, to the court of common pleas of Dauphin County, Pennsylvania. The case was heard by agreement without a jury, the court finding both the law and the facts.

The following were the findings of fact:

"1. The defendant is a corporation of the State of New York, engaged in the business of transporting freight and passengers. Its railroad runs through the county of Susquehanna, in this State.

"2. It leases and operates as one of its branches, a railroad lying wholly within this State, known as the Jefferson branch, which extends from Carbondale to a connection with the defendant's main line in said county of Susquehanna. At Carbondale the Jefferson branch connects with the railroad of the Delaware and Hudson Canal Company, a corporation engaged in mining and transporting coal, and also in transporting freight and passengers.

"3. The canal company makes use of the Jefferson branch in the manner, for the purposes, and upon the terms specified in an agreement made April 7, 1885. This agreement is made a part of this finding.

"4. Under the eighth clause of said agreement, the canal company paid to the defendant for the transportation of coal and merchandise during the six months ending June 30, 1889, the sum of $69,462.11. Of this amount, $69,100 was in respect of coal and merchandise transported by the canal company over the said Jefferson branch in transit to points in other States; the said coal and merchandise, when taken upon the cars and upon said Jefferson branch, being destined and intended for shipment by continuous transportation upon a single way bill, from points in Pennsylvania to points in other States, and having been actually so transported to, and delivered at, points in other States; and $362.11 was paid in respect of coal and merchandise taken up and put down within the State of Pennsylvania. The canal company has paid to the State a tax upon its gross receipts for the transportation of the coal and merchandise in respect of which it paid to the defendant the said sum of $362.11.

"5. Under the sixteenth clause of said agreement, the canal

company paid to the defendant the sum of $2000, of which $1000 was made up of half fares collected from local passengers taken up and put down within the State of Pennsylvania, and $1000 was in respect of passengers carried interstate by continuous transportation into, out of, or through the State of Pennsylvania.

"6. The defendant also leases and operates, as one of its branches, a railroad known as the Buffalo, Bradford, and Pittsburgh branch, extending from Buttsville or Gilesville, Pennsylvania, to a connection with defendant's main line at Carrollton, in the State of New York. At Crawford Junction, Pennsylvania, a point on this branch, the railroad of the Buffalo, Rochester and Pittsburgh Railway Company (formerly the Rochester and Pittsburgh Railroad Company) connects with said branch. This last-mentioned corporation is engaged in the transportation of freight and passengers.

"7. The Buffalo, Rochester and Pittsburgh Railway Company makes use of part of the Buffalo, Bradford and Pittsburgh branch in the manner, for the purpose, and upon the terms specified in an agreement made October 20, 1882, which agreement is made a part of this finding. The part used lies partly in this State and partly in the State of New York.

"8. Under this agreement the amount paid to the defendant by the Buffalo, Rochester and Pittsburgh Railway Company, during the six months ending June 30, 1889, was $2700, being one semi-annual payment. For the same period the Buffalo, Rochester and Pittsburgh Railway Company paid to the State a tax upon its gross receipts, so far as the same were derived from transportation between points both of which are within the State of Pennsylvania.

"9. This settlement taxes the entire gross receipts of the defendant from its business in Pennsylvania for the six months ending June 30, 1889, under section 7 of the act of 1879, and includes therein the sums paid by the canal company and by the Buffalo, Rochester and Pittsburgh Railway Company.

"10. On February 10, 1890, the defendant paid to the State the whole amount demanded, except the tax upon said sums of $71,462.11 and $2700."

The conclusions of law were as follows:

" 1. The rentals paid to the defendant by the canal company and by the Buffalo, Rochester and Pittsburgh Railway Company are 'receipts for tolls' within the meaning of section 7 of the act of 1879.

" 2. The taxation of such receipts does not offend against article 9, section 1 of the Pennsylvania constitution, or against the commerce clause of the Federal Constitution.

" 3. Such taxation is not, in the case before us, double taxation.

" 4. The toll received by the defendant from the Buffalo, Rochester and Pittsburgh Railway Company should be apportioned, and only so much thereof be taxed as represents the sum paid for the use of that part of defendant's branch which lies within the State.

" The sum due the Commonwealth is as follows:

Tax eight-tenths of 1 per cent upon $71,402.11 paid
   by the Delaware and Hudson Canal Company. . . . $571 69
And upon $1350 paid by the Buffalo, Rochester and
   Pittsburgh Railway Company . . . . . . . . . . . . . . . . .    10 60
Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    31 63
Attorney General's commission . . . . . . . . . . . . . . . . . . .    29 11

        Total. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $643 03
for which amount judgment is directed to be entered."

Upon exception the court made an additional finding as follows:

" That portion of defendant's railroad, known as the Buffalo, Bradford and Pittsburgh branch, extending from Buttsville or Gilesville, Pennsylvania, to a connection with defendant's main line at Carrollton, in the State of New York, as shown in findings of fact No. 6, is used by the Buffalo, Rochester and Pittsburgh Railway Company for the purposes of interstate transportation exclusively."

Judgment was entered in pursuance of the findings of fact and law, from which an appeal was taken to the Supreme Court of Pennsylvania, and the judgment was by that court

affirmed, and to that judgment a writ of error was sued out from the Supreme Court of the United States.

*Mr. M. E. Olmsted* for plaintiff in error.

*Mr. James A. Stranahan* for defendant in error.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The legislature of Pennsylvania, by a revenue statute approved June 7, 1879, enacted that certain enumerated classes of companies, including railroad companies, whether incorporated by or under any law of the Commonwealth, or whether incorporated by any other State, doing business in the Commonwealth, and owning, operating, or leasing to or from any other corporation, any railroad, canal, pipe line, slack-water navigation, or street passenger railway, or other device for the transportation of freight or passengers, shall pay to the state treasurer, for the use of the Commonwealth, a tax of eight-tenths of one per centum upon the gross receipts of said company for *tolls and transportation.*

In the leading case of *Boyle* v. *Philadelphia & Reading Railroad Co.,* 54 Penn. St. 310, 314, the Supreme Court of Pennsylvania, through Mr. Justice Strong, then a justice of that court, thus defined the term "tolls," as used in the tax laws of that State : " Toll is a tribute or custom paid for passage, not for carriage — always something taken for a liberty or privilege, not for a service ; and such is the common understanding of the word. Nobody supposes that tolls taken by a turnpike or canal company include charges for transportation, or that they are anything more than an excise demanded and paid for the privilege of using the way."

This definition was subsequently approved in the case of *Pennsylvania Railroad* v. *Sly,* 65 Penn. St. 205, and was followed by the trial court, and the Supreme Court of Pennsylvania, in the present case. A construction or meaning attributed to the terms of a state statute by the courts of

such State will, of course, be adopted by this court when called upon to decide questions arising under such legislation ; and we shall accordingly assume in the present case that the moneys received by the New York, Lake Erie and Western Railroad Company from the Delaware and Hudson Canal Company and from the Rochester and Pittsburgh Railroad Company for their use of the railroad of the former company were *tolls* within the meaning of the statute of 1879.

It was found as a fact by the court below that the New York company leased and operated as one of its branches a railroad lying wholly within the State of Pennsylvania, and that under an agreement between it and the Delaware and Hudson Canal Company the latter paid the former for the use of its railroad during the six months ending June 30, 1889, the sum of $69,462.11. This amount became payable under the eighth section of said agreement, which was in the following terms :

"The canal company shall pay to the railroad company trackage on the Jefferson branch of the New York, Lake Erie and Western Railroad to the amount of one-fourth of one cent per ton per mile ; but the total amount in any one year shall not be less than $120,000, and the same shall be payable monthly."

The canal company furnished its own cars and locomotives, and the moneys paid to the New York company were tolls or rentals for the use of its railroad. Of the amount paid as aforesaid, the sum of $69,100 was in respect of coal and merchandise destined and transported to points in other States, and $36,210 was paid in respect of coal and merchandise taken up and put down within the State of Pennsylvania.

The precise question, then, for our solution is, whether the State of Pennsylvania can validly impose taxes on tolls paid by one company to another for the use of its railroad, where the company paying the tolls is engaged in the transportation of merchandise from points within the State to points beyond.

It is, of course, obvious that what is objected to is not the payment of the tolls, for they arise by virtue of the contract between the companies, but the imposition of taxes thereon.

It is contended that such taxes tend to increase the rents or tolls demanded and received by the company owning the road, and thus constitute a burthen upon transportation and commerce between the States.

In support of this contention numerous decisions of this court are cited, in which it has been held that state statutes which levy taxes upon gross receipts of railroads for the carriage of freights and passengers into, out of, or through the State put a burthen upon commerce among the States, and are therefore void.

It is needless to review the cases cited, because we regard the proposition they are quoted to sustain as thoroughly established; but is the principle of those cases applicable to this?

Undoubtedly, state taxation of interstate commerce, directly placed upon the articles or subjects of such commerce, or upon the necessary means of their transportation, may be used to restrict or regulate such commerce, and, more than once, this court has been obliged to pronounce invalid state legislation respecting such matters. On the other hand, we have frequently had occasion to show that the existence of Federal supervision over interstate commerce and the consequent obligation upon the Federal courts to protect that right of control from encroachment on the part of the States, are not inconsistent with the power of each State to control its own internal commerce, and to tax the franchises, property, or business of its own corporations engaged in such commerce, nor with its power to tax foreign corporations on account of their property within the State.

Owing to the paramount necessity of maintaining untrammelled freedom of commercial intercourse between the citizens of the different States, and to the fact that so frequently transportation and telegraph companies transact both local and interstate business, it has been found difficult to clearly define the line where the state and the Federal powers meet. That difficulty has been chiefly felt by this court in dealing with questions of taxation, and is shown by the not infrequent dissents by members of the court when the effort has been

made to formulate a general statement of the law applicable to such questions.

It is unnecessary, at this time, to again review the cases, or to undertake to show that, while the facts and circumstances that distinguish one case from another may have led to some difference in the mode of stating the law, there is yet a substantial uniformity in the decisions. It is sufficient for our present purposes to refer to the recent case of *Postal Telegraph Company* v. *Adams*, 155 U. S. 688, 695, where many of the cases were considered, and where the general results reached are thus stated:

"It is settled that where by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a State on interstate commerce, such taxation amounts to a regulation of such commerce and cannot be sustained. But property in a State belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a State, and may take the form of a tax for the privilege of exercising its franchises within the State, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the State, (the exaction, therefore, not being susceptible of exceeding the sum which might be leviable directly thereon,) and if payment be not made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes. The corporation is thus made to bear its proper proportion of the burdens of the government under whose protection it conducts its operations, while interstate commerce is not in itself subjected to restraint or impediment."

Coming to apply these settled principles to the case in hand we find no difficulty.

The tax complained of is not laid on the transportation of the subjects of interstate commerce, or on receipts derived therefrom, or on the occupation or business of carrying it on.

It is a tax laid upon the corporation on account of its property in a railroad, and which tax is measured by a reference to the tolls received. The State has not sought to interfere with the agreement between the contracting parties in the matter of establishing the tolls. Their power to fix the terms upon which the one company may grant to the other the right to use its road is not denied or in any way controlled.

It is argued that the imposition of a tax on tolls might lead to increasing them in an effort to throw their burthen on the carrying company. Such a result is merely conjectural, and, at all events, too remote and indirect to be an interference with interstate commerce. The interference with the commercial power must be direct, and not the mere incidental effect of the requirement of the usual proportional contribution to public maintenance.

One of the assignments of error is based on the finding that " that portion of defendant's railroad, known as the Buffalo, Bradford and Pittsburgh branch, extending from Buttsville or Gilesville, Pennsylvania, to a connection with defendant's main line at Carrollton in the State of New York, as shown in findings of fact No. 6, is used by the Buffalo, Rochester and Pittsburgh Railway Company for purposes of interstate transportation exclusively," and it is claimed that the court erred in apportioning the tax according to the portions of the railroad within and without the State.

We do not understand that any objection is made as to the fairness of the apportionment, but the claim is that, as all the business done over the road by the lessee party was interstate commerce, it was not competent for the State to tax the tolls received by the company which owned the road. Thus understood, the legal question is the same with that which arose under the contract between the defendant company and the Delaware and Hudson Canal Company, and which is hereinbefore considered.

The fact that the same corporation which owns the track in Pennsylvania owns likewise a track in New York, does not deprive such company of the right to receive tolls for the use of that part of its road that lies in Pennsylvania, nor the State

of its right to tax such portions of the tolls; and this is what the court below decided.

In *Maine* v. *Grand Trunk Railway*, 142 U. S. 217, it was held that a state statute which requires every corporation, person, or association operating a railroad within the State to pay an annual tax, to be determined by the amount of its gross transportation receipts, and further provides that, when applied to a railroad lying partly within and partly without the State, or to one operated as a part of a line or system extending beyond the State, the tax shall be equal to the proportion of the gross receipts in the State, to be ascertained in the manner provided by the statute, does not conflict with the Constitution of the United States, and that the tax thereby imposed upon a foreign corporation operating a line of railway, partly within and partly without the State, is one within the power of the State to levy.

So, in the case of *Pittsburgh &c. Railway Co.* v. *Backus*, 154 U. S. 421, the validity of a state tax law, whereby a railroad which traversed several States was valued for the purposes of taxation by taking that part of the value of the entire road which was measured by the proportion of the length of the particular part in that State to that of the whole road, was upheld.

Our conclusion is that the Federal questions involved in the case were properly decided by the court below, and its judgment is accordingly

*Affirmed.*

MR. JUSTICE HARLAN dissented.

---

TIOGA RAILROAD COMPANY *v.* PENNSYLVANIA. NEW YORK, LAKE ERIE AND WESTERN COAL AND RAILROAD COMPANY *v.* PENNSYLVANIA. NEW YORK, PENNSYLVANIA AND OHIO RAILROAD COMPANY *v.* PENNSYLVANIA. Error to the Supreme Court of the State of Pennsylvania. MR. JUSTICE SHIRAS delivered the opinion of the court. The foregoing cases, Nos. 264, 265, and 266, October term, 1894, are, so far as the Federal questions involved

are concerned, precisely like case No. 263.  They call for no addi-
tional consideration, and, for the reasons given in No. 263, the judg-
ment of the court below in the several cases is

*Affirmed.*

MR. JUSTICE HARLAN dissented.

*Mr. M. E. Olmsted* for plaintiffs in error.

*Mr. James A. Stranahan* for defendant in error.