THE MERCHANT'S TRANSFER COMPANY, Appellant, v. THE BOARD OF REVIEW OF THE CITY OF DES MOINES, IOWA, Appellee.

**Taxation:** CONSIGNED PROPERTY: TO WHOM ASSESSABLE. The property of a non-resident stored with a consignee in this State for an indefinite period and for the purpose of distribution on sales by the owner is properly assessable to the consignee under the provisions of Code sections 1314 and 1318.

**Inter State Commerce:** TAXATION OF PROPERTY IN TRANSIT. Property of a non-resident while actually in transit is not subject to taxation, but when stored with a consignee within the state, for an indefinite period, awaiting sale by the owner and distribution by the consignee, it cannot be said to be in transit and its taxation in the district where so stored is not an infringement of the interstate commerce law.

*Appeal from Polk District Court.*— HON. HUGH BRENNAN,
Judge.

WEDNESDAY, NOVEMBER 15, 1905.

APPEAL from action of board of review in confirming the
assessment to the plaintiff of certain personal property for
the purpose of taxation.— *Affirmed.*

*Parrish, Dowell & Parrish,* for appellant.

*W. H. Bremner, M. H. Cohen,* and *W. M. McLaughlin,*
for appellee.

WEAVER, J.— The plaintiff is a corporation engaged in
the business of transferring, or hauling for hire, goods, wares,
and merchandise from place to place in the city of Des
Moines, upon the employment or at the direction of the owners
of such property.   It would appear, also, that in connection
with or as an aid to such business the corporation keeps and
makes use of one or more storehouses or places of deposit,
where goods may, when so desired, be stored or preserved,
subject to the order of the owner or shipper.   In the year 1893
the city assessor assessed to the plaintiff for the purposes of
taxation some thirty-three different items of merchandise,
consisting mostly or entirely of farm implements and ma-
chinery.   Plaintiff appeared before the board of review and
resisted the assessment on the ground that none of the property
belonged to it, and it was in no manner liable to or chargeable
with the payment of taxes thereon.   This objection being
overruled, plaintiff appealed to the district court, where the
ruling of the board of review was affirmed, and from said
judgment as to nine of the assessed items it has appealed to
this court.

It is not claimed that plaintiff was the actual owner of
the property at the time of the assessment, but it is the theory

of the appellee that the goods were in plaintiff's possession under circumstances rendering them taxable in its hands under the terms of Code, section 1318. The evidence tends to show that the nine items of goods in controversy came into the possession of the appellant in the following manner: The several owners are non-resident manufacturers, who sell goods in Iowa through local dealers. Orders are solicited and received each year, some considerable period before a delivery is desired and before the opening of the season when the retail demand is active. As there is an advantage in rates of transportation to be had by shipping in car load lots, and as many of the local dealers order less than a car load, the manufacturers are accustomed to "bunch" a sufficient quantity of machinery or wares to cover the orders received and ship it in car load or train load lots to the city of Des Moines as a convenient central station or shipping point. These shipments are all consigned to the appellant transfer company, which thereafter, upon orders and directions received from the shipper, forwards to the several local dealers such smaller items or quantities as are required to fill their contracts.

Sometimes repairs or articles of minor value are sent out by the shipper, which are not required to fill orders received; and at times orders for local dealers are canceled, thus bringing about an accumulation of goods for which no orders are outstanding; but the highest estimate of goods in this class in any one item assessed is 25 per cent. of the total value.

As we understand the record (though this is probably not a controlling circumstance) when a car load or quantity of machinery is thus sent, no particular machine or implement is set apart marked and designated for any particular person or individual local dealer; but the shipper simply plans to send enough of each kind to the consignee at the transfer point to satisfy the outstanding orders as a whole, and relies upon that consignee to make the distribution when

ordered or directed so to do. The large shipments to the transfer company are made in the latter part of the year in anticipation, as already stated of the opening of the selling season, and are stored in the appellant's warehouse until sent out upon the shipper's orders — a period ranging from three to seven months. It was shipments of this character which the assessor found in appellant's possession on January 1, 1903, and upon which the contested assessment was made.

I. It is the contention of the appellant that its possession of the property was not of the character to make the property taxable in its hands. By Code, section 1314, merchants, assigneees, and others having in their possession the taxable property of nonresidents are classed as owners for the purposes of assessment. In the same chapter, section 1318, the following provision is found: "Any person, firm or corporation owning or having in his possession or under his control within the State, with authority to sell the same any personal property purchased with a view of its being sold or which has been consigned to him from any place out of this State, to be sold within the same, or to be delivered or shipped by him within or without this State, shall be held to be a merchant for the purpose of this title."

1. TAXATION: consigned property: to whom assessable.

Counsel argue that the reference here made to the property consigned to a person within the State "to be delivered or shipped by him within or without the State" should be construed as modified and limited by the preceding words, "with authority to sell," and as the transfer company did not have authority to sell the goods they were not taxable under this section. We are very clear that this construction is unwarranted. If it was the intention of the Legislature to require the assessment of such property only as was held for sale by the party in possession that intent was fully expressed and effected by the preceding clause and there was no occasion for the use of the latter clause. Furthermore, when we

speak of the possession by one person of the goods of another for the purposes of delivery or shipment, the idea thus expressed necessarily excludes the thought of power in the possessor to sell. Again, the language of the section is in the alternative, and the power is given to assess (1) property in possession within the State with power to sell, or (2) property purchased with a view of being sold, or (3) property which has been consigned to the holder to be delivered or shipped by him within or without the State. If any particular item of property within the State falls within the description of either clause, it is assessable. The property in controversy had been consigned to appellant from without the State and was being held by it for the purposes of delivery and shipment, and unless there be other reason for its exemption than is contained in the language of this statute the judgment appealed from must be affirmed.

II.    It is next urged that the goods, though at rest in appellant's warehouse, were in fact in transit between nonresident sellers and resident buyers, and that the assessment

2. INTERSTATE COMMERCE: taxation of property in transit.

thereof in the hands of the transfer company operates as an interference with or burden upon interstate commerce, and is therefore beyond the constitutional power of the State. That merchandise which is actually in transit from one State to another cannot be properly subjected to local taxation in a taxing district through which it is being transported is too well settled for controversy. Of the many cases so holding, one of the latest is *Kelley v. Rhoades,* 188 U. S. 1 (23 Sup. Ct. 259, 47 L. Ed. 359), which is cited and relied upon by the appellant. But when such merchandise comes to a rest which is not a natural, or at least possible, incident of transportation, when transit ceases or is interrupted, and the property is stored or warehoused for an indefinite period for the convenience of the shipper or of the consignee, the principle upon which *Kelley v. Rhoades* and other precedents of that class are made to turn is not applicable. This distinction is carefully noted

in the cited case, where the court, speaking by Mr. Justice Brown, says: " The law upon this subject, so far as it concerns interference with interstate commerce, is settled by several cases in this court which hold that property in transit is exempt from local taxation, although, *if it be stored for an indefinite time during such transit, at least for other than natural causes or lack of facilities for immediate transportation, it may be lawfully assessed by the local authorities.*"

In another connection the same opinion says: " The substance of these cases is that while the property is at rest for an indefinite time awaiting transportation, or awaiting the sale at its place of destination, *or at an intermediate point,* it is subject to taxation. But, if it be actually in transit to another State, it becomes the subject of interstate commerce, and is exempt from local assessment." Unless, then, we are to entirely ignore that part of the opinion which we have italicized, the case is not an authority for the position taken by the appellant herein, but goes rather to the support of the holding of the trial court. The goods, when assessed, were not in actual transit. They had been deposited in appellant's warehouse, not as a mere incident to their carriage, but to facilitate a distribution thereafter to be made. Their further movement had not been delayed by accident or casualty of any kind, or by reason of any " lack of facilities for immediate transportation." They came into appellant's possession, not as one of a succession of carriers between consignor and consignee, but appellant was itself the consignee and agent of the consignor, to receive, store, keep, and thereafter, upon orders from the consignor, to make distribution among its customers.

It would require a most violent perversion of the plain ordinary meaning of the words to say that goods so held are in any just sense " in transit." The shipments had reached their destination for the time being and become a part of the general property of the State. As such they were subject to the taxing power of the State. In this conclusion we

find direct and authoritative support in *American Steel & Wire Co. v. Speed,* 192 U. S. 500 (24 Sup. Ct. 365, 48 L. Ed. 538). In most of its material features this case is parallel with the one at bar. The plaintiff was a manufacturer of wire. Its sales to dealers in the territory of which Memphis, Tenn., was the commercial center, were negotiated by traveling agents, who canvassed that territory and took orders or contracts for future delivery. The goods necessary to fill these orders were massed in large shipments and forwarded to the Patterson Transfer Company, of Memphis, a corporation carrying on a business similar to that of the appellant in the case at bar. Under its arrangements with the shipper the duty of the transfer company as stated in the opinion was confined to the transfer of the goods so received to the warehouses, the keeping of them in storage, and their subsequent delivery to the customers of the manufacturing company under its general or special orders. Goods thus received and in the possession of the transfer company were assessed for local taxation. The Supreme Court of the State held that such property was not to be treated as in transit, and sustained the validity of the tax. On appeal to the Supreme Court of the United States this judgment was affirmed.

A rule to the same logical effect was also announced by that court in *Brown v. Houston,* 114 U. S. 622 (5 Sup. Ct. 1091, 29 L. Ed. 257), and *Pittsburg Coal Co. v. Bates,* 156 U. S. 577 (15 Sup. Ct. 415, 39 L. Ed. 538). In the latter case a coal company in Pennsylvania consigned several barge loads of coal to its agent in New Orleans for sale at that market. As a matter of convenience the barges were stopped and moored in the river before reaching New Orleans, to be there held until forwarded upon order of the agent. While thus detained the local assessor of the taxing district where the boats were tied up listed the property for taxation, and this tax was held to be within the constitutional power of the State. To the same effect, see *Burlington Lumber Co. v. Wil-*

*litts,* 118 Ill. 559 (9 N. E. 254).   Quite identical in princi-
ple, also, is *New York ex rel. v. Knight,* 192 U. S. 21 (24
Sup. Ct. 202, 48 L. Ed. 325).   It must be borne in mind,
also that to invalidate the act of a State, as an unwarranted
interference with interstate commerce, such interference with
the reserved power of the general government "must be
direct, and not the mere incidental effect of the requirement
of the usual proportional contribution to the public mainte-
nance."   *N. Y. R. R. v. Pennsylvania,* 158 U. S. 439
(15 Sup. Ct. 896, 39 L. Ed. 1043).   And we think, if the
tax now in question can be said to impose any burden upon
interstate commerce, it is only in a very remote and incidental
way.   There is nothing inherently unjust in a provision of
law which compels all property situated in the State and
enjoying its protection to bear its equal and just share of
the public burdens, the statute in question is clearly within
the constitutional power of the State, and the assessor is not
shown to have abused or transcended the authority thus given
him.

Counsel seek to distinguish the American Steel & Wire
Co. Case to which we have adverted by suggesting that, owing
to some peculiar provisions of the contracts of sale made by
the company's agents and the manner in which the business
was done, such sales were in fact consummated after the
goods had come into the hands of the transfer company.   In
our opinion it is equally true in the case at bar that no sale
was consummated until the appellant, acting upon the order
of the manufacturer, assorted out the goods and shipped them
from its warehouse to the customers.   Up to that time the
possession of the common carrier was the possession of the
original shipper.   No delivery actual or constructive had
been made to the customer, no sale had been concluded, and
no title passed.   Whether these goods should ever be for-
warded to the retail dealers, or should remain in the ware-
house, or should be diverted to meet other demands of the
trade, rested wholly in the will of the shipper.   When the

order to forward was finally given and the designated goods were again put in course of transportation there was to all intents and purposes a new and independent shipment. But, be this as it may, the answer to the question whether the sales had been consummated is by no means necessarily decisive of the inquiry whether the goods at the date of the assessment were actually in transit, and therefore protected against local taxation. For reason already sufficiently stated, we hold that when the shipments had reached the consignee, the transfer company, and had been stored in its warehouse subject to the shipper's orders, they had arrived at their destination for the time being, and that the mental purpose of such shippers to have the goods thereafter distributed and sent out to their several customers could have no effect to make such property exempt from taxation or clothe it with the peculiar immunities pertaining to interstate commerce. *Coe v. Errol,* 116 U. S. 517 (6 Sup. Ct. 475, 29 L. Ed. 715.) ; *Myers v. Baltimore,* 83 Md. 385 (35 Atl. Rep. 144, 34 L. R. A. 309, 55 Am. St. Rep. 349).

Other points made in argument are controlled by the conclusions already announced.

The judgment of the district court was right, and is *affirmed.*