### STATE v. MAXWELL MOTOR SALES CORPORATION.[1]

April 11, 1919.

No. 21,217.

**Findings sustained by evidence.**

1. The evidence sustains findings that defendant, a manufacturer of automobiles at Detroit, Michigan, procured orders for sale of automobiles for future delivery in Minnesota and other northwest states, that, on account of difficulties in obtaining railroad equipment, automobiles were shipped by defendant from Detroit to Minneapolis to fill these orders in advance of the delivery dates, and were stored in Minneapolis until delivery was due and then reshipped to the purchasers. A number of such automobiles were in storage in Minneapolis on May 1, 1916.

**Taxation — chattels in transit taxable when stored for indefinite time.**

2. Property in transit from state to state is exempt from state taxation, but if it be stored for an indefinite time during transit it may be lawfully assessed by the state authorities.

**Same — chattels not in transit taxable.**

3. This property was not in transit. It was at rest for an indefinite time in Minneapolis and was properly taxed.

**Same — assessed valuation of automobiles.**

4. The assessed valuation of the automobiles was not excessive. It did not exceed the price at which defendant sold them. This was their value for purpose of taxation.

In the matter of the assessment and taxation of personal property for the year 1916, defendant corporation filed its answer to a citation from the district court for Hennepin county, and alleged that defendant was not engaged in the transaction of any business whatsoever in the state of Minnesota on May 1, 1916, nor any business done on behalf of defendant, and that all its business was conducted at Detroit, Michigan, where all its accounts and assets were kept; that the automobiles and materials arbitrarily assessed had been manufactured, sold and loaded on cars, outside of the state of Minnesota, long prior to May 1, 1916, and

[1]Reported in 171 N. W. 566.

were consigned to points within Minnesota or to points beyond, and said automobiles and materials were instruments of interstate commerce and were, if at all, in the city of Minneapolis and state of Minnesota, temporarily only, and were in transit and did not remain longer than was necessary for shipment to the owners thereof. The matter was heard by Dickinson, J., who made findings, affirmed the valuation of the board of equalization, and ordered judgment for $3,750.37. From an order denying its motion to amend the findings, order for judgment and judgment, defendant appealed. Affirmed.

*M. A. Jordan,* for appellant.

*William M. Nash,* County Attorney, and *Frank J. Williams,* Assistant County Attorney, for respondent.

HALLAM, J.

1. Defendant was taxed in Hennepin county for 460 automobiles in its possession on May 1, 1916. From a judgment sustaining the tax defendant appeals.

Defendant manufactures automobiles at Detroit, Michigan. The court found the following facts:

"That defendant sent its salesmen into the territory embraced in the states of Minnesota, North and South Dakota, Montana and Eastern Wisconsin to take orders from local dealers. These orders were taken as near to July 1st of each year as was possible and provided for distributing the delivery of automobiles so ordered over the succeeding twelve months in accordance with the anticipated sales by the local dealers and provided expressly for the number of automobiles to be delivered in each of said months.

"On account of difficulties experienced by defendant in procuring railroad equipment at all seasons of the year for making deliveries on their contracts with the dealers at the times therein provided, defendant shipped automobiles, sufficient in number to cover the orders previously taken, to the city of Minneapolis, at such times as railroad equipment was available. These automobiles were shipped to the defendant at the city of Minneapolis, there unloaded from the cars and stored in various warehouses to await the time of delivery called for in various contracts hereinbefore referred to. When these deliveries were due, the home office

at Detroit forwarded to defendant's representatives at Minneapolis shipping instructions. Acting on these instructions the representative at Minneapolis caused the automobiles to be shipped in accordance therewith, drawing on the dealers for the purchase price with bill of lading attached to the draft.

"That on May 1st, 1916, there were in various warehouses in the 5th ward of the city of Minneapolis 460 automobiles so shipped by defendant to its order of the value of $218,500.00.

"These automobiles were in storage in the warehouses for indefinite periods of time awaiting instructions to the local representative for their shipment to the dealers under the contract previously taken. The automobiles so in the warehouses on May 1st, 1916, had arrived there from thirty to sixty days prior to May 1st, many of them remaining there for sixty days or longer, thereafter."

Defendant attacks the findings. The only evidence is that of defendant's branch superintendent in Minneapolis. It is unimpeached and is to be taken as true. We think it substantially sustains the findings of the court, subject however, to the following additions or modifications: Orders from dealers are embodied in written agreements procured from distributors by defendant's salesmen and these are forwarded to Detroit and are signed there by an officer of defendant. Orders from Detroit to the Minneapolis branch directing the distribution of cars sometimes go forward as cars are shipped from Detroit to Minneapolis, sometimes they go out later. The proceeds of drafts drawn on dealers for the price of cars sold are remitted direct to Detroit. It appears that when cars are shipped from Detroit to Minneapolis, no particular car is appropriated to any particular distributor. In fact the distributor's contract provides that the distributor may cancel orders on "fifteen (15) days written notice before the first of the month in which he wishes to cancel said automobiles."

2. Defendant contends that this property was the subject of interstate commerce and not subject to state taxation. The property had been imported from the state of Michigan and was intended for further transportation, and the contention is that its location in Minneapolis on May 1 was temporary only and as part of the transit.

The law on the subject is settled by several cases in the United States

Supreme Court. Property actually in transit from state to state is exempt from state taxation, but if it be stored for an indefinite time during such transit, at least for other than natural causes, or lack of transportation, it may be lawfully assessed by the state authorities. Kelly v. Rhoads, 188 U. S. 1, 23 Sup. Ct. 259, 47 L. ed. 359; American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 Sup. Ct. 365, 48 L. ed. 538; General Oil Co. v. Crain, 209 U. S. 211, 28 Sup. Ct. 475, 52 L. ed. 754; Susquehanna Coal Co. v. South Amboy, 228 U. S. 665, 33 Sup. Ct. 712, 57 L. ed. 1015; see also State v. William Deering & Co. 56 Minn. 24, 57 N. W. 313.

In General Oil Co. v. Crain, supra, oil was shipped in tank cars from points in Ohio and Pennsylvania to Memphis. At Memphis the oil was unloaded for the purpose of being forwarded to customers in Arkansas, Louisiana and Mississippi, in which states the oil company had on hand many unfilled orders for oil to be delivered as soon as possible or convenient. At Memphis the oil company maintained two tanks, one was plainly marked "Oil already sold in Arkansas, Louisiana and Mississippi," and it contained oil unloaded at Memphis only for the purpose of distribution among customers who had purchased the oil before its original shipment. This oil remained in Memphis only long enough (a few days) to be properly distributed according to the orders therefor. It was held that the oil was not in movement through the state. The court said, that to distribute the oil in filling orders already received, required that the property be given a locality in the state beyond the mere halting in its transportation, it required storage there, the maintenance of the means of storage, of putting it in and taking it from storage. It was said that the company was doing business in the state and its property was receiving the protection of the state and was subject to the state taxation.

In Susquehanna Coal Co. v. South Amboy, supra, coal was shipped from Pennsylvania to South Amboy, New Jersey, on requisition from agents, to fill orders and contracts previously made. At South Amboy the coal was unloaded and reshipped by water to customers in other states. If, when the coal arrived at South Amboy, bottoms were on hand, the coal was transferred from the cars to the bottoms; if not, the coal was dumped into a storage yard until subsequently loaded for ship-

ment. The coal was held subject to taxation at South Amboy. The court said, there was something more than submission to delay in transportation, the property was held within the state for purposes deemed by the owner to be beneficial, there was a business purpose and advantage in the delay, and while it was availed of the products secured the protection of the state, and this constituted a cessation of interstate commerce and subjection to the dominion of the state.

3. In this case the property was not in transit on May 1, 1916. It was at rest for an indefinite time in the city of Minneapolis. The conclusion follows that it was properly taxed.

4. The valuation was not excessive. It was but little in excess of the value fixed by defendant on some similar cars that were admittedly subject to taxation and not in excess of their usual price. This was their value for the purpose of taxation. G. S. 1913, § 1975, subdivision 5.

Judgment and order affirmed.