SEARS, ROEBUCK & COMPANY, appellee, v. CITY OF FORT MADISON, BOARD OF REVIEW (members), and FORT MADISON INDEPENDENT SCHOOL DISTRICT, appellants.

No. 49937.

(Reported in 102 N.W.2d 916)

MAY 3, 1960.

Norman A. Erbe, Attorney General, Gary S. Gill, Assistant Attorney General, of Des Moines, and Roy W. Deitchler and Johnson & Phelan, all of Fort Madison, for appellants.

McManus & McManus, of Keokuk, and James L. Devitt, of Oskaloosa, for appellee.

PETERSON, J.—This is an action in equity by Sears, Roebuck & Company, a New York corporation, against the City of Fort Madison. The petition prays that an assessment for taxes levied on its stock of merchandise in its order or catalog house in Fort Madison be held null and void by reason of the provisions of the third clause in section 8, Article I, of the Constitution of the United States.

Appellee maintains what is known as a catalog store in Fort Madison. Customers come to the store and select the articles they desire to buy, either from the catalog issued by the company or from a skeleton stock of goods displayed in the store. The order is then sent to Sears, Roebuck & Company in Chicago. As to large articles such as refrigerators, washing machines etc., as a rule they are sent back to the catalog store with the name or number of the customer attached to the article. As to general articles of merchandise such as brooms, socks, etc., they are packaged together in a large carton, with the goods wrapped for each customer and identified by number. The carton is opened, and the goods distributed to the customers.

Occasionally, but not very often, a customer desires the goods ordered sent to him direct by mail, express or freight. He has the right to make that choice. Such articles are not involved in this action. Most items are delivered at the store to the customer, after he has paid for the merchandise. After a customer's order arrives at the store, if he does not call in seven days, a postal card is sent to him advising him of arrival

of the merchandise. If, for any reason, the customer on inspection decides he does not want the articles or if the goods are left for thirty days without the customer calling and paying for them, they are returned to the Chicago warehouse of plaintiff.

In 1957 the city assessor of Fort Madison placed a valuation of $6000 on plaintiff's merchandise held in the catalog store, and levied an assessment on it, similar to assessments against other merchants. This value was the average daily value of the merchandise held in the store throughout the year. This was the method of assessment as to all merchants. Protest as to levy of the tax was filed with the City Council of Fort Madison, sitting as a Board of Review, and was overruled. This action was then filed, claiming the merchandise was the property of the purchasers, and while in the store was still within the protected stream of interstate commerce and was only temporarily held locally. Plaintiff alleges it was exempt from any local taxation under the constitutional provision above quoted.

The trial court held that Sears, Roebuck & Company still owned the property because it was never delivered to the customer until paid for. However, the trial court also held that it was still a part of interstate commerce until delivered to the customer and declared the assessment void.

Fort Madison Independent School District filed petition of intervention supporting the City of Fort Madison in its contention. The City and School District have appealed.

The proposition relied upon for reversal is: "When the continuity of transit is interrupted or terminated for the business purposes and profit of the shipper/taxpayer, the property involved is no longer in interstate commerce and the protection afforded the property by the U. S. Constitution Article I, Section 8, is at an end, thereby subjecting the property to an ad valorem tax."

I. Appellee complains in its brief about the ruling of the trial court that plaintiff was the owner of the property. We hold the court was correct. No ownership nor possession passed from plaintiff to the customer until the goods were delivered and paid for. At times the customer was not satisfied, or did

not call for the goods within thirty days, in which event they were returned to the warehouse in Chicago.

In support of its position the court cites Wind v. Iler & Co., 93 Iowa 316, 319, 61 N.W. 1001, 1002, 27 L. R. A. 219, and quotes: "It is an elementary proposition of law, needing no citation of authority in its support, that title passes in the sale of personal property when from all circumstances surrounding the transaction it is evident that the parties to the sale intended it to pass. It is wholly a question of intention to be arrived at from the contract and the acts and conduct of the parties."

The court then said: "For these reasons, the court finds that title to the goods has not passed to the customer and was in Sears Roebuck & Company at the time of the assessment. Appellant [in the District Court], Sears Roebuck & Company, in their reply brief, more or less abandon this point when they say that the question of whether the property involved was or was not in interstate commerce on the tax assessment date is the truly decisive point in the case, with which the court agrees."

II.  The provision of the Constitution of the United States involved in this case is the third clause of section 8, Article I, as follows: "To regulate Commerce with foreign Nations, *and among the several States,* and with the Indian Tribes." (Emphasis ours.)

It is pertinent to recognize that no federal legislation has been enacted to implement this constitutional provision. Interpretation rests exclusively on judicial pronouncements.

The trial court recognized the extreme closeness of the question involved. After a very able discussion of the constitutional question in the case, the court said: "* * * In view of the more recent decisions of the Supreme Court of the United States, the court feels there is considerable doubt as to whether the Supreme Court of the United States would not now permit the state to tax the property on the theory that the property had come to rest in the state of Iowa and the interstate shipment was terminated at the time the tax was levied.".

Finally after its lengthy discussion, and in the last paragraph of its decision, the court said:

"However, the court is obligated to follow the rule of stare decisis, and therefore finds that the goods held in the Catalog Office at Fort Madison, Iowa, which were forwarded from Chicago, Illinois, in response to an existing order from a customer are in interstate commerce and are not subject to state taxation under the rulings of State v. Caldwell, Rearick v. Pennsylvania and the Iowa case of State v. Eckenrode until after delivery is made to the customer."

See Caldwell v. North Carolina, 187 U. S. 622, 23 S. Ct. 229, 47 L. Ed. 336; Rearick v. Commonwealth of Pennsylvania, 203 U. S. 507, 27 S. Ct. 159, 51 L. Ed. 295; State v. Eckenrode, 148 Iowa 173, 127 N.W. 56.

In Caldwell v. North Carolina, supra (1902), Mr. Caldwell was arrested under a city ordinance of the city of Greensboro for failing to secure a license for selling or delivering photographs in the city. He had previously secured orders for the photographs and sent them to Chicago Portrait Company at Chicago. The photographs were then sent to him at Greensboro for the purpose of delivery. He was making such delivery when arrested. The United States Supreme Court held the fine was an interference with interstate commerce and reversed the Supreme Court of North Carolina, which had approved his arrest and sentence.

In Rearick v. Pennsylvania, supra (1906), an Ohio corporation employed an agent to solicit orders for groceries in Sunbury. When the company in Columbus received a large number of orders they placed the order of each customer in separate packages and forwarded them to their agent. He received them at the railroad station and delivered them to the customers. Rearick was arrested and convicted of unlawful soliciting, sale and delivering goods at retail on the streets of the city. The Supreme Court of Pennsylvania affirmed the conviction. The Supreme Court of the United States reversed, holding the ordinance under such circumstances was an interference with interstate commerce.

The Eckenrode case involved an accusation of violation as to the state pure food law. Defendant took orders for various

items of groceries for a wholesale supply company in Ohio. One package included in an order was several ounces short of the weight displayed on the package. The contention of defendant was that the goods were in interstate commerce and, therefore, not subject to any tax or fine of any nature by the state of Iowa. On this basis the trial court acquitted defendant and this court affirmed. The decision was rendered in 1910.

While in its result the case supports the position of the trial court in the case at bar, yet there is some language used by the court (at page 181 of 148 Iowa) which is significant: "But when sold or broken, or when it changes form, it ceases to be an article of interstate commerce, and no longer enjoys this protection. The original package, then, is that package which is delivered by the importer to the carrier at the initial point of shipment, in the exact condition in which it was shipped. If sold, it must be in the form as shipped or received: for, if the package be broken after such delivery, it, by that act alone, becomes a part of the common mass of property within the state, and is subject to the laws of that state enacted by virtue of its police power."

There were some cartons broken, and the goods distributed by numbers, in the case at bar.

III. There are many decisions to the contrary, somewhat similar and applicable to the case at bar. Bacon v. People of State of Illinois, 227 U. S. 504, 33 S. Ct. 299, 57 L. Ed. 615; Independent Warehouses, Inc., v. Scheele, 331 U. S. 70, 67 S. Ct. 1062, 91 L. Ed. 1346; Merchants Transfer Co. v. Board of Review of City of Des Moines, 128 Iowa 732, 105 N.W. 211, 2 L. R. A., N. S., 662, 5 Ann. Cas. 1016; American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 S. Ct. 365, 48 L. Ed. 538; Pittsburgh & Southern Coal Co. v. Bates, 156 U. S. 577, 15 S. Ct. 415, 39 L. Ed. 538; Northwestern States Portland Cement Co. v. Minnesota, 358 U. S. 450, 79 S. Ct. 357, 3 L. Ed. 2d 421, 67 A. L. R.2d 1292; New York, L. E. & W. R. Co. v. Commonwealth of Pennsylvania, 158 U. S. 431, 439, 15 S. Ct. 896, 39 L. Ed. 1043; General Oil Co. v. Crain, 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754; State v. Maxwell Motor Sales Corp., 142 Minn. 226, 171 N.W. 566; McGoldrick v. Berwind-White

Coal Mining Co., 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876; Minnesota v. Blasius, 290 U. S. 1, 54 S. Ct. 34, 78 L. Ed. 131; Wisconsin v. J. C. Penney Co., 311 U. S. 435, 61 S. Ct. 246, 85 L. Ed. 267, 130 A. L. R. 1229.

The distinction in many decisions is primarily on the following grounds: 1. There must be some value rendered to the owner of the merchandise from the break in interstate transportation and the goods being at rest. 2. Another basis of the tax is the benefit or protection the municipality, or the state, can render to the merchandise or its owner.

IV. We will first consider the benefit or value to the owner, of the fact that the goods are at rest.

It is of value to plaintiff to have a store on a principal street in the business district of a city. It is easily accessible to prospective customers. Properly located, it attracts customers. It creates a convenient place for customers to get their merchandise. Plaintiff established a "local facility" for its own benefit.

The case of State v. Eckenrode, supra, is not the only decision of this court rendered in the early part of the century on the subject of taxation as to merchandise in interstate commerce. In 1905 the decision was announced in Merchants Transfer Co. v. Board of Review, supra, which decision is contrary to the Eckenrode case. Plaintiff maintained storehouses in Des Moines and as they transferred merchandise from other states it was placed in these storehouses. The articles were assessed by the city of Des Moines and this action resulted. Plaintiff's claim was that though the goods were at rest in its warehouse they were, in fact, in transit between nonresident sellers and resident buyers. This is the claim of plaintiff in the instant case. In some instances, although not all, the goods stored by plaintiff were under sale orders. The court stated at page 737 of 128 Iowa:

"They [the merchandise] had been deposited in appellant's warehouse, not as a mere incident to their carriage, *but to facilitate a distribution thereafter to be made.* Their further movement had not been delayed by accident or casualty of any kind, or by reason of any 'lack of facilities for immediate transporta-

tion.' * * * appellant was itself the consignee and agent of the consignor, to receive, store, keep, and thereafter, upon orders from the consignor, to make distribution among its customers." (Emphasis ours.)

The case of State v. Maxwell Motor Sales Corp., supra, involved a local levy of tax in Hennepin County, Minnesota. It is somewhat similar to the case at bar. Defendant shipped a large number of automobiles from Detroit to Minneapolis. They were stored in a warehouse to be sent to dealers in Minnesota, North and South Dakota, Montana and Wisconsin. Defendant was taxed in Hennepin County, Minnesota, for 460 automobiles in its possession on May 1, 1916. The District Court sustained the tax and the Supreme Court affirmed. Defendant contends this property was the subject of interstate commerce and not subject to state taxation.

Many of the orders for the cars were taken as the cars were shipped out of Detroit and before reaching Minneapolis.

The court held defendant was doing business in the state and its property was receiving the protection of the state. The property was held within the state *for purposes deemed by the owner to be beneficial; there was a business purpose and advantage to defendant in the delay.* This constituted a cessation of interstate commerce and a subjection to the dominion of the state.

American Steel & Wire Co. v. Speed, supra, involved the shipment of wire, nails etc., from Chicago to Memphis, Tennessee, by Patterson Transfer Company. At Memphis the transfer company stored them in a warehouse. It sorted them and made delivery to the persons to whom the goods had been sold by the Steel Company. The company contended the goods were merely in transit from the point of manufacture outside the state of Tennessee to the persons to whom they had been previously sold. This is the contention of appellee with reference to the merchandise involved in the instant case.

The Supreme Court in sustaining the tax said at pages 512, 513 of 192 U. S.: " 'The goods of complainant are manufactured at different points, *and it is convenient and useful, from a busi-*

*ness point of view, to mass them at someplace at which they can be assorted, and from which they can be distributed to complainant's customers. * * * The evidence further shows that, as a general rule, prior to the time the goods are shipped to Memphis, sales agents of the complainant canvass the southwestern country, and make contracts exclusively with jobbers; and in each instance where a contract is made it is embodied in writing, on a form prepared by complainant, in which is set down the amount of goods which constitutes the subject of the contract, and the time agreed upon within which they are to be delivered. * * * These contracts are made, usually before the goods arrive at Memphis, * * * and generally the contracts are made in advance of the production of the goods at complainant's factory. * * *.'* "* (Italics supplied.)

The court finally said (page 518): "With these facts in hand we are of opinion that the court below [Tennessee Supreme Court] was right in deciding that the goods were not in transit, but, on the contrary, had reached their destination at Memphis, and were there held in store at the risk of the Steel Company, to be sold and delivered as contracts for that purpose were completely consummated."

V. We will consider the second distinction; that plaintiff is receiving some services and protection from the municipality or state claiming taxes. In the case at bar, plaintiff's merchandise had police and fire protection; normally the benefit of a paved street in front of its store; city lighting; street cleaning; snow removal etc. If its employees had children, they had the benefit of the public-school system.

Bacon v. Illinois, supra, pertains to shipment of wheat from the wheat fields of Texas and Kansas to the east coast of the United States. Mr. Bacon purchased the wheat in the west and sold it in the east. It was shipped through on bills of lading from the wheat fields to the east coast. However, Mr. Bacon had an arrangement with the railroads that the wheat should be unloaded in Chicago and placed in his elevator for the purpose of inspecting, weighing, cleaning, drying, sacking and grading and thereafter returned to the railroad to complete its journey. While undergoing the above process the city of Chi-

cago levied a tax against the wheat in plaintiff's elevator. In sustaining the tax the United States Supreme Court said (page 517 of 227 U. S.: "In the present case the property was held within the state for *purposes deemed by the owner to be beneficial;* it was not in actual transportation; and there was nothing inconsistent with the Federal authority in compelling the plaintiff in error to bear with respect to it, in common with other property in the state, *his share of the expenses of the local government."* (Emphasis ours.)

What he (Bacon) had done was to establish a "local facility in Chicago *for his own benefit* and while, through its employment, the grain was there at rest, there was no reason why it should not be included with his other property within the State in an assessment for taxation which was made in the usual way without discrimination." (Page 516 of 227 U. S.) (Emphasis ours.)

General Oil Co. v. Crain, supra, involves a shipment of oil from Pennsylvania and Ohio to Arkansas, Louisiana and Mississippi. The oil was placed in vessels and shipped to Memphis, Tennessee. The case has similarities to the case at bar.

The shipment involved: "A tank or vessel in which is kept oil for which orders have been received from the States above mentioned before its shipment from the manufacturing plants, and which is especially shipped to fill such orders." (Page 213 of 209 U. S.)

The oil was unloaded at Memphis and placed in tanks marked "Oil already sold in Arkansas, Louisiana and Mississippi." It remained in Memphis long enough to be properly distributed according to the orders already on hand.

The state of Mississippi had a statute providing for the appointment of an inspector of oils. He inspected all oil coming into the state and charged therefor twenty-five cents per barrel. The defendant is the inspector and the action is an injunction action enjoining him from inspecting and charging for the oil above described. Plaintiff claims that the statute operates as an interference with or burden upon interstate commerce, and is therefore beyond the constitutional power of the state under the third clause of section 8 of Article I of the Constitution.

The court said at pages 230 and 231 of 209 U. S.: "The company was doing business in the state, and *its property was receiving the protection of the state.* Its oil was not in movement through the state. It had reached the destination of its first shipment, and it was held there, not in necessary delay or accommodation to the means of transportation * * * *but for the business purposes and profit of the company.* It was only there for distribution, it is said, to fulfill orders already received. [As in the case at bar] But to do this required that the property be given a locality in the state beyond a mere halting in its transportation. * * * [it was] brought to rest in the state and *for which the protection of the state is necessary,* a purpose outside of the mere transportation of the oil." (Emphasis ours.)

Merchants Transfer Co. v. Board of Review, supra, also considered this phase of the situation. The court said on page 739 of 128 Iowa, page 213 of 105 N.W.: "It must be borne in mind, also, that to invalidate the act of a State, as an unwarranted interference with interstate commerce, such interference with the reserved power of the general government [of the State] 'must be direct, and not the mere incidental effect of the requirement of the usual proportional contribution to the public maintenance.' N. Y. R. R. v. Pennsylvania, 158 U. S. 439. * * * There is nothing inherently unjust in a provision of law *which compels all property situated in the State and enjoying its protection to bear its equal and just share of the public burdens.*" (Emphasis ours.)

Wisconsin v. J. C. Penney Co., 311 U. S. 435, 444, 61 S. Ct. 246, 249, 85 L. Ed. 267, involves a general corporate income tax act on earnings attributable to its Wisconsin activities. The Wisconsin Supreme Court held the tax void. The United States Supreme Court, in an opinion by Justice Frankfurter, reversed. The court said:

"A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to *protection which it has afforded, to benefits which it has conferred* by the fact of being an orderly, civilized society. * * *

"The simple but controlling question is whether the state has given anything for which it can ask return. The substantial privilege of carrying on business in Wisconsin, which has here been given, clearly supports the tax * * *." (Emphasis ours.)

The court cast up the balance as between the effect of the interstate commerce constitutional provision and local taxes in the case of McGoldrick v. Berwind-White Coal Mining Co., supra, at page 48 of 309 U. S., in the following language: The purpose is "that commerce between the states shall not be unduly impeded by state action, and *that the power to lay taxes for the support of state government shall not be unduly curtailed.*" (Emphasis ours.)

We quote from 171 A. L. R., page 284: "* * * if the interruption in the journey occurred for purposes connected with the *business convenience or profit* of the taxpayer, or the owner of the property, then the continuity of the transit must be regarded as having been so disturbed as to destroy the immunity of the property from local taxation." (Emphasis ours.)

In 54 Harvard Law Review, page 949, a carefully prepared article appears with reference to the third clause in section 8, Article I, of the Constitution. After directing attention to the conflict between the taxing powers and revenue needs of the states, and that Congress possesses the constitutional power to legislate in order to cope with the major conflict, but has refrained from adopting any statutory provisions on the subject, the article states that the Supreme Court has recently been reflecting doubt as to the wisdom and propriety of its intercession, and by recent decisions and interpretations of the Commerce Clause had substantially broadened the taxing powers of the states.

Until recently the prevailing doctrine was that interstate commerce could not be taxed at all; that the Commerce Clause had a self-operating immunizing effect, and the role of the court was to enforce the Commerce Clause by invalidating all taxes found to be levied on any phase of interstate commerce. This sweeping view no longer prevails and the area of forbidden state taxation has been considerably cut down. The article takes the position that the provisions of the Constitution relat-

ing specifically to state taxation indicate that except as to foreign commerce the states were to be left free to tax until their action came into conflict with congressional legislation; that the United States Supreme Court has been moving in the direction of broadening the taxing powers of the states.

It is obvious that the most recent case of the Supreme Court moves in that direction. This case involves decisions of the Supreme Courts of both Minnesota and Georgia, considered and decided in one United States Supreme Court decision. They are Northwestern States Portland Cement Co. v. Minnesota, 1959, 358 U. S. 450, 79 S. Ct. 357, and Williams v. Stockham Valves and Fittings, Inc.

Both of these cases involve State income tax of the corporations on the volume of business of each in the two respective states. Minnesota Supreme Court upheld the tax.

Georgia Supreme Court canceled the tax as a violation of Article I, section 8. The United States Supreme Court affirmed the Minnesota decision and reversed the Georgia decision.

The opinion was written by Justice Clark. In the opinion the court said at pages 452, 458, 461, 462 of 358 U. S., pages 359, 362, 364 of 79 S. Ct.: "We conclude that net income from the interstate operations of a foreign corporation may be subjected to state taxation provided the levy is not discriminatory and is properly apportioned to local activities within the taxing State forming sufficient nexus to support the same. * * * the decisions have been 'not always clear * * * consistent or reconcilable. A few have been specifically overruled, while others no longer fully represent the present state of the law.' * * *

"While it is true that a State may not erect a wall around its borders preventing commerce an entry, it is axiomatic that the founders did not intend to immunize such commerce from carrying its fair share of the costs of the *state government in return for the benefits it derives from within the State.* The levies are not privileged taxes based on the right to carry on business in the taxing State. The States are left to collect only through ordinary means. The tax, therefore, is 'not open to the objection that it compels the company to pay for the privilege of engaging in interstate commerce.' * * * (Emphasis ours.)

" 'It is interstate commerce which the State is seeking to reach and * * * the real question [is] whether what the State is exacting is a constitutionally fair demand by the State for that aspect of the interstate commerce to which the State bears a special relation.' The apportioned tax is designed to meet this very requirement and 'to prevent the levying of such taxes as will discriminate against or prohibit the interstate activities or will place the interstate commerce at a disadvantage relative to local commerce.' "

Justice Stone in Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 254, 255, 259, 58 S. Ct. 546, 548, 550, 115 A. L. R. 944, 948, 951, stated as follows:

*"It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden* even though it increases the cost of doing business. 'Even interstate business must pay its way.' * * * All of these taxes in one way or another add to the expense of carrying on interstate commerce, and in that sense burden it; but they are not for that reason prohibited. On the other hand, local taxes, measured by gross receipts from interstate commerce, have often been pronounced unconstitutional. The vice characteristic of those which have been held invalid is that they have placed on the commerce burdens of such a nature as to be capable, in point of substance, of being imposed * * * [or added to] with equal right by every state which the commerce touches, merely because interstate commerce is being done, so that without the protection of the commerce clause it would bear cumulative burdens not imposed on local commerce. * * * Experience has taught that the opposing demands that the commerce shall bear its share of local taxation, and that it shall not, on the other hand, be subjected to multiple tax burdens merely because it is interstate commerce, are not capable of reconciliation by resort to the syllogism. Practical rather than logical distinctions must be sought." (Emphasis ours.)

VI. The trial court made a distinction in its discussion as between goods at rest in a state for which no previous orders had been taken, and goods which were under order from a customer, as in the case at bar.

It indicated as to the first class there is no doubt about the goods coming at rest. As to the second class, they are still in interstate commerce and immune from state or local tax. Many of the cases we have cited, and from which we have quoted, are in the class where orders were previously taken, as in the case at bar. They do not sustain this distinction of the court. American Steel & Wire Co. v. Speed; General Oil Co. v. Crain; State v. Maxwell Motor Sales Corp.; Merchants Transfer Co. v. Board of Review, all supra.

Both state and federal courts have faced the realities of the situation, in view of the complexity of modern commerce, and have modified their position as to what property, stopped in transportation, is at rest and subject to taxation.

We have somewhat relaxed our position in Iowa in recent years as to personal property coming at rest in the state and becoming a part of the great mass of property within the state and consequently subject to taxation of some type. City of Ames v. State Tax Commission, 246 Iowa 1016, 71 N.W.2d 15; Michigan-Wisconsin Pipe Line Co. v. Johnson, 247 Iowa 583, 73 N.W.2d 820; Northern Natural Gas Co. v. Lauterbach, 251 Iowa 885, 100 N.W.2d 908.

The decision and judgment of the trial court is reversed.— Reversed.

All JUSTICES concur except BLISS and OLIVER, JJ., not sitting.