## *McALESTER-EDWARDS COAL CO. *et al.* v. TRAPP, *State Auditor, et al.*

No. 4795.   Opinion Filed April 28, 1914.

Rehearing Denied October 6, 1914.

(141 Pac. 794.)

1. STATUTES—Title and Subject-Matter—Gross Revenue Tax. The act of May 26, 1908, entitled ''An act providing for the levy and collection of a gross revenue tax * * * from persons, firms, corporations or associations engaged in the mining or production of coal, asphalt or ores bearing lead, zinc, jack, gold, * * * natural gas; and declaring an emergency'' (Sess. Laws 1907-08, c. 71, art. 2, pp. 640-645), and the amendment thereto, contained in an act of the Legislature of 1909 (Sess. Laws 1909, c. 38, art. 2, sec. 1, p. 624), are not repugnant to section 57, art. 5, of the Constitution.

2. TAXATION—Gross Revenue Tax—Indians—Validity of Statute. Section 6 of an act of the Legislature of May 26, 1908 (Sess. Laws 1907-08, c. 71, art. 2, p. 640), requiring every person, firm, or corporation engaged in the mining or production within the state of coal to file quarterly reports with the State Auditor, showing the gross amount produced, along with the actual cash value and payment to the State Treasurer of a gross revenue tax thereon, provides for a property tax, and is not invalid as being an unauthorized burden or restriction upon the federal government in its intercourse with the Choctaw and Chickasaw Tribes of Indians.

3. SAME—Construction of Statute—Retrospective Effect. The act of the Legislature of March 10, 1910 (Sess. Laws 1910, c. 44, p. 65), entitled ''An act providing for the levy and collection of a gross revenue tax from public service corporations in this state and from persons, firms, corporations or associations engaged in the mining or production of coal,'' etc., is in the nature of a revision or substitution for the act of May 26, 1908 (Sess. Laws 1907-08, c. 71, art. 2). The proviso of section 6 of said act reads: ''That any such person, firm, association or corporation shall, at the time of making its report to the State Auditor, set out specifically the amount of royalty required to be paid for the benefit of the Indian citizen, Indian tribe or landlord and in computing said tax shall pay on the actual cash value of the entire gross production less the royalty paid by such person, firm or corporation.'' Held, this proviso, as an amendment to the original act, is remedial, and should be given a retrospective effect.

(Syllabus by the Court.)

---

* Appealed to the Supreme Court of the United States.

*Error from Superior Court, Pittsburg County;*
*W. C. Liedtke, Judge.*

Injunction by the McAlester-Edwards Coal Company and others against M. E. Trapp, State Auditor, and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

See, also, 38 Okla. 792, 132 Pac. 1190; 38 Okla. 794, 134 Pac. 1198.

*Clayton & Clayton, Wright & Boyd,* and *Gordon & McInnis,* for plaintiffs in error.

*Chas. West,* Atty. Gen., for the State.

RIDDLE, J.   The parties to this proceeding filed an agreed case in the superior court of Pittsburg county in August, 1909, in pursuance of section 4717, Wilson's Rev. & Ann. Statutes (section 5303, Rev. Laws 1910), whereby the plaintiffs sought to perpetually enjoin the defendants as officers of the state from collecting certain taxes, and to have the court declare the act of the Legislature of 1907-08, entitled "An act for the levying and collection of a gross revenue tax," etc., and the amendatory act thereof, contained in chapter 71, Sess. Laws 1908 (sections 7459-7469, Rev. Laws 1910), in contravention of the provisions of the Constitution of the United States and void.

It is agreed: That the plaintiffs are each an incorporated company, and are engaged in the mining and production of coal upon and from lands which have been segregated by the Secretary of the Interior, belonging to the Chickasaw and Choctaw Nations, under leases entered into with the trustees in pursuance of an act of Congress approved June 28, 1898 (30 Stat. 495, sec. 13, c. 517, commonly known as the Atoka Agreement), and of the act of Congress approved July 1, 1902 (32 Stat. 641, c. 1362), entitled "An act to ratify and confirm an agreement with the Choctaw and Chickasaw Tribes of Indians, and for other purposes." That all coal and mineral upon or under the surface of the land described in the respective leases held by plaintiffs was reserved under an act of Congress for the use and benefit of the members of the tribes, and with the right in the

government to have exclusive control and management of said segregated lands. It is also agreed that the plaintiffs, as lessees, are paying certain royalties into the treasury of the United States, in pursuance of the provisions of said lease contracts, for the use and benefit of said tribes of Indians.

A temporary injunction was issued on the 7th day of August, 1909, which was, on the 21st day of January, 1913, dissolved and set aside by a final judgment of the superior court. To reverse the judgment of the trial court in denying the relief prayed for by plaintiffs, this appeal is prosecuted.

The first contention of plaintiffs is that the law providing for the collection of the tax sought to be restrained is invalid, in that it does not specify the purpose for which said tax was levied; second, that said statute is in contravention of the federal Constitution, in that the United States government has sole control over the land where the coal is mined, and by the lease contracts referred to has granted plaintiffs the right to mine such coal, constituting plaintiffs agents of the federal government, and that by the provisions of the law in question an attempt is made to tax its franchise and rights to mine coal conferred under the leases, thereby taxing an instrumentality of the federal government, which tax has the direct effect to hinder, burden, and restrict its intercourse with the Indian tribes. In behalf of the defendants, it is the contention of the Attorney General that the tax provided for in said law is not upon any franchise granted to plaintiffs by the federal government, nor a tax upon the pursuit of mining engaged in by the plaintiffs, but that the same is a tax upon the personal property owned by plaintiffs; hence does not in any way burden or restrict the government or any instrumentality of the government in its intercourse with the Indian tribes.

The provisions of the law referred to and which are involved and affected by this proceeding are sections 6 and 7a of Session Laws 1907-08, p. 642, and the amendments thereto, as follows:

"Sec. 6. Every person, firm, association or corporation engaged in the mining, or production, within this state, of coal, or asphalt, or of ores bearing lead, zinc, jack, gold, silver, or cop-

per, or of petroleum or other mineral oil or of natural gas, shall, within thirty days after the expiration of each quarter annual period expiring respectively on the first day of July, October, January and April of each year, file with the State Auditor a statement under oath, on forms prescribed by him, showing the location of each mine, or oil, or gas well, operated by such person, firm, association, or corporation during the last preceding quarter annual period, the kind of mineral, oil, or gas; the gross amount thereof produced; the actual cash value thereof; and such other information pertaining thereto as the State Auditor may require and shall at the same time, pay to the State Treasurer a gross revenue tax, which shall be in addition to the taxes levied and collected upon an *ad valorem* basis upon such mining, oil, or gas property and the appurtenances thereunto belonging, equal to two *per centum* of the gross receipts from the total production of coal therefrom. * * *"

"Sec. 7a. When satisfactory evidence under oath is produced to the State Auditor that any person, firm, association, or corporation engaged in mining or producing within this state asphalt, lead, zinc, jack, gold, silver, copper, or petroleum or other mineral oil, have in this state manufactured or refined any portion of such products in this state and thereafter on the finished product have paid *ad valorem* taxes, the State Auditor is hereby authorized to rebate and pay to such person, firm, association or corporation the just proportion of taxes paid by said person, firm, association or corporation, on his or its crude product under section six of this act, which shall have been found to have been turned into finished product as aforesaid, and cause such sum, if any, so rebated, to be repaid by warrant drawn on the State Treasurer."

Section 1, art. 2, c. 38, Session Laws 1909, is an amendment to section 6, *supra,* which amendment, so far as is material here, provides specifically for the payment of taxes upon the ores specified in section 6, *supra,* and reduces the tax upon the total production from 2 per cent. to one-half of 1 per cent., the same as upon oil and gas. Section 27 of said act provides:

"All laws or parts of laws in conflict herewith are hereby repealed."

This whole law relative to gross revenue taxes was re-enacted by the Legislature, and is contained in Session Laws 1910, by an act of the Legislature approved March 10, 1910. Sess.

Laws 1910, c. 44, p. 65. The provision, in so far as is applicable here, is practically the same, with a proviso, however, at the end of section 6 as follows:

"Provided, that any such person, firm, association or corporation shall at the time of making its report to the State Auditor, set out specifically the amount of royalty required to be paid for the benefit of the Indian citizen, Indan tribe or landlord and in computing said tax shall pay on the actual cash value of the entire gross production less the royalty paid by such person, firm or corporation."

While this amendment became effective after the agreed case was filed, yet it was in force and effect long prior to the time said cause was heard and final judgment rendered in the trial court, and is a remedial statute, and should be given a retrospective effect. 36 Cyc. 1209, and cases cited.

The first ground raised by the plaintiffs, that said law is invalid and contrary to the provisions of the Constitution of Oklahoma, in that it fails to specify the purpose for which said tax is levied, etc., is not well taken. This point has been settled adversely to the contention of the plaintiffs by this court in the cases of *Binion v. Oklahoma Gas & Elec. Co.,* 28 Okla. 356, 114 Pac. 1096, and *McGannon v. State,* 33 Okla. 145, 124 Pac. 1063. Hence this point need not be noticed further.

The only question remaining for our consideration is, assuming, without deciding, that plaintiffs are agents of the federal government, for the purpose of developing, operating, and mining the coal lands as provided for in the leases referred to, and as contended by plaintiffs: Does the law in question attempt to levy and collect a tax upon such right to so operate and carry on said mining, or upon the leases held by said plaintiffs, or upon the means employed by the government in the development of such coal lands? Plaintiffs assert that this question must be answered in the affirmative. If they are correct in this assertion, the law would be invalid; but, if this question may be properly answered in the negative, then the law is valid, and the judgment appealed from should be affirmed.

It may be stated in the outset that it is unquestionably the law that the taxing power of the state is one of its attributes of

sovereignty, and that it may be exercised to an unlimited extent upon all property, trade, business, avocation existing or carried on within the territorial boundaries of the state, except so far as it has been surrendered to the federal government, either expressly or by necessary implication. *Railway Co. v. Peniston,* 18 Wall. 5, 21 L. Ed. 787; Cooley on Taxation, vol. 1, p. 129. It is equally as well settled that no state has the power to tax the means employed by the federal government in the execution of its powers, or, by any law, restrict or burden its instrumentalities. The fact that said plaintiffs, for certain limited and specified purposes, may be the agents of the federal government is not incompatible with the authority of the state government to levy and collect a tax upon their property, in that they receive the equal protection of the laws guaranteed to every other citizen of the state. The main and important question is not whether said plaintiffs are, to a limited extent and for certain specified purposes, agents of the federal government, but it is this: Does the law which is sought to be declared void provide for the collection of a tax upon the right to operate said mines by plaintiffs, or to state it in another way, upon the means employed by the government in the operation of said mines; or is it a tax sought to be assessed and collected upon personal property owned by plaintiffs? This identical question was before the Supreme Court of the United States in the case of *Thomson v. Pac. R. Co.,* 76 U. S. (9 Wall.) 579, 19 L. Ed. 792, and the rule was thus stated:

"We fully recognize the soundness of the doctrine that no state has 'a right to tax the means employed by the government of the Union for the execution of its powers.' But we think there is a clear distinction between the means employed by the government and the property of agents employed by the government. Taxation of the agency is taxation of the means; taxation of the property of the agent is not always, or generally, taxation of the means. No one questions that the power to tax all property, business, and persons, within their respective limits, is original in the states and has never been surrendered. It cannot be so used, indeed, as to defeat or hinder the operations of the national government; but it will be safe to conclude, in general, in reference to persons and state corporations employed in government service, that when Congress has not interposed to

protect their property from state taxation such taxation is not obnoxious to that objection."

See, also, *Telegraph Co. v. Texas,* 105 U. S. 460, 26 L. Ed. 1067; *Baltimore Shipbuilding Co. v. Baltimore,* 195 U. S. 375, 25 Sup. Ct. 50, 49 L. Ed. 242.

Again, as said by the federal Supreme Court in *Railroad Company v. Peniston,* 18 Wall. 5, 21 L. Ed. 787 ·

"But it is often a difficult question whether a tax imposed by a state does, in fact, invade the domain of the general government, or interfere with its operations to such an extent, or in such a manner, as to render it unwarranted. It cannot be that a state tax which remotely affects the efficient exercise of a federal power is for that reason alone inhibited by the Constitution. To hold that would be to deny to the states all power to tax persons or property. Every tax levied by a state withdraws from the reach of federal taxation a portion of the property from which it is taken, and to that extent diminishes the subject upon which federal taxes may be laid. The states are, and they must ever be, coexistent with the national government." *Lane County v. Oregon,* 7 Wall. 77, 19 L. Ed. 101.

In the case of *Baltimore Shipbuilding Co. v. Baltimore,* 195 U. S. 375, 25 Sup. Ct. 50, 49 L. Ed. 242, the court, speaking through Mr. Justice Holmes, said:

"But, furthermore, it seems to us extravagant to say that an independent private corporation for gain, created by a state, is exempt from state taxation, either in its corporate person, or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time."

Cases are cited by the Attorney General wherein expressions are used by the federal Supreme Court indicating that there was no inhibition upon the state in taxing the instrumentalities of the federal government, provided such tax did not materially interfere or burden the government in the prosecution of its affairs; but a close examination of these cases seems to disclose that the court undertook to draw a distinction between the law then under consideration, which sought to levy a tax directly upon the instrumentality or agency of the federal government, and those cases holding that the law was apparently an attempt to impose a tax against such federal agency, but was, in fact, so remotely

connected with the agency or instrumentality of the government that it could not be said to be a direct tax or burden on such agency. We think this distinction is made more clear in the recent decision by the federal Supreme Court, delivered by Mr. Justice Pitney in the case of *Farmers' & Mechanics' Savings Bank of Minneapolis v. Minnesota,* 232 U. S. 516, 34 Sup. Ct. 354, 58 L. Ed. —, Mr. Justice Pitney quoting from *First Nat. Bank v. Kentucky,* 9 Wall. 353, 19 L. Ed. 701:

" 'The principle we are discussing has its limitation—a limitation growing out of the necessity on which the principle itself is founded. That limitation is that the agencies of the federal government are only exempted from state legislation so far as that legislation may interfere with or impair their efficiency in performing the functions by which they are designed to serve that government.' "

Again, quoting from the case of *Union P. R. Co. v. Peniston,* 18 Wall. 5, 21 L. Ed. 787, he says:

" 'It is therefore manifest that exemption of federal agencies from state taxation is dependent not upon the nature of the agents, or upon the mode of their constitution, or upon the fact that they are agents, but upon the effect of the tax; that is, upon the question whether the tax does in truth deprive them of power to serve the government as they were intended to serve it, or does hinder the efficient exercise of their power. A tax upon their property has no such necessary effect. It leaves them free to discharge the duties they have undertaken to perform. A tax upon their operations is a direct obstruction to the exercise of federal powers.' "

Mr. Justice Pitney, proceeding:

"But we deem it entirely clear that a tax upon the exercise of the function of issuing municipal bonds is a tax upon the operations of the government, and not in any sense a tax upon the property of the municipality."

Upon a close examination, it is reasonably clear that the court was drawing the line of demarcation between cases wherein the law under consideration really imposed a tax directly upon the agency, or the means used by the government, and those cases involving a law which simply imposed a tax upon the property of the agent. The argument is made by plaintiffs' counsel that the power to tax necessarily carries with it the power to destroy,

and they say if the Legislature of the state may impose a tax of 2 per cent. and the law be upheld; it may impose a tax of 20 or 100 per cent. on the gross revenue of plaintiffs, and be upheld upon the same theory; that a tax of 100 per cent. would clearly be confiscatory, but, if the power exists to impose a tax, the fact that it is confiscatory is no argument against and the tax must stand; and that a tax of 100 per cent. would directly and approximately drive the plaintiffs out of business. Hence, they say, the tax is upon the agency or the means employed by the government, and not upon the property. In this conclusion we are unable to agree. If plaintiffs' counsel agreed that this tax is imposed against the property of plaintiffs, and not upon any agency, the argument could be made with as much reason as that made by them, and a conclusion of law reached equally as sound. It is conceded that the power to tax necessarily carries with it the power to destroy, and therefore to confiscate plaintiffs' property by taxation would necessarily put an end to their business; hence, if counsel's argument is sound, it would be an interference with the means of the federal government in the prosecution of the business of mining coal for the benefit of the members of the Indian tribes. The argument and the reason in the latter case is just as sound as that made by counsel in support of their contention. Concerning the provisions of section 6 of the act of the Legislature of 1907-08 under consideration and the amendments thereto, in connection with the other provisions, it is reasonably clear that this tax was intended to be assessed and collected upon the value of the property owned by plaintiffs, and not upon any franchise or lease held under the federal government, nor upon the agency or the means used by the federal government in its intercourse and dealings with the Indian tribes; and, while it is designated as a gross revenue tax, yet, by considering the different sections of the statute and the amendments, it is clear that this law undertakes to provide a means or standard by which the reasonable fair cash value of the property may be reached. This law was re-enacted as contained in chapter 44 of the Session Laws of 1910, wherein it is provided that:

"Any    *    *    *    person, firm,    *    *    *    or corporation shall, at the time of making its report to the State Auditor, set out specifically the amount of royalty required to be paid for the benefit of the Indian citizen, Indian tribe or landlord, and in computing said tax shall pay on the actual cash value of the entire gross production less the royalty paid by such person, firm or corporation."

This section, read in connection with the other sections quoted, clearly shows the Legislature never intended to, and did not, impose a tax or burden upon the means of the government in developing and operating the coal mines in question. Neither does this law tax or burden any of the property or royalties in which the government and the Indian tribes are interested. Construing this section in connection with section 8, it is rendered more clear that this was intended to be, and is only a property tax. Said section provides:

"When satisfactory evidence under oath is produced to the State Auditor that any person, firm, association, or corporation engaged in mining or producing within this state asphalt, lead, zinc, jack, gold, silver, copper, or petroleum or other mineral oil have in this state manufactured or refined any portion of such products in this state and thereafter on the finished products have paid *ad valorem* taxes, the State Auditor is hereby authorized to rebate and pay to such person, firm, association or corporation the just proportion of taxes paid by said person, firm, association or corporation, on his or its crude productions under section six of this act, which shall have been found to have been turned into finished product as aforesaid, and cause such sum, if any, so rebated, to be repaid by warrant drawn on the State Treasurer."

This section provides that a rebate shall be paid to such firm, person, or corporation on his or its gross production under section 6 of this act, clearly showing that the Legislature considered that the tax required to be paid under section 6 was upon the coal as personal property, after it had been extracted from the mines, and after the royalties had been paid to the government. In other words, the plaintiffs were not required to pay taxes upon the coal until the coal had been mined and removed from the mines, and the amount of royalties due under their lease contract paid to the government, or ascertained by a statement to be filed by

such lessee, and the amount of such royalty deducted. In our judgment, it is immaterial what name is given to the tax, or under what name it is collected; but, if the law on its face reasonably shows that it was intended that the tax should be paid upon the fair cash value of the coal after it had been extracted from the mines and the royalties had been deducted therefrom, that it was a tax upon the property of plaintiffs, and not on the agency or means used by the government in the development and carrying out of its plans in behalf of the Indian tribes.

In *Galveston, H. & S. A. R. Co. v. Texas,* 210 U. S. 217, 28 Sup. Ct. 638, 52 L. Ed. 1031, it was said:

"By whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor ascertained by reference thereto it is not open to attack as inconsistent with the Constitution." *Postal Teleg. Cable Co. v. Adams,* 155 U. S. 688, 15 Sup. Ct. 268, 360, 39 L. Ed. 311; *New York, L. E. & W. R. Co. v. Pennsylvania,* 158 U. S. 431, 15 Sup. Ct. 896, 39 L. Ed. 1043.

Justice Holmes, speaking further:

"The question is whether this is such a tax. It appears sufficiently, perhaps, from what has been said that we are to look for a practical, rather than a logical or philosophical, distinction. The state must be allowed to tax the property and to tax it at its actual value as a going concern. On the other hand the state cannot tax the interstate business."

Quoting again from the late decision of the Supreme Court of the United States, in *Ohio R. & W. R. Co. v. Dittey,* 232 U. S. 576, 34 Sup. Ct. 372, 58 L. Ed. —:

"The present act does not on its face manifest a purpose to interfere with interstate commerce, and we are unable to accept the historical facts alluded to as sufficient evidence of a sinister purpose, such as would justify this court in striking down the law."

And in this case to hold that the Legislature intended to lay this tax against the means employed by the government in its proper and legitimate intercourse with the Indian tribes would be to attribute to the Legislature an attempt to evade the Constitution and unlawfully invade the domain of the federal government. The question here involved and the relation existing

between plaintiffs and the federal government as to the business carried on by them is similar to the relation sustained by Indian traders under the license from the federal government to such government. While it must be conceded the state would have no authority to impose a tax upon the right of an Indian trader to engage in the business, or upon the means used by the federal government in its intercourse with the Indian tribes through such Indian trader, yet it must also be conceded that the state would have a perfect right to tax the property owned by such Indian trader, including the stock of merchandise owned in pursuance of such license.

It is agreed that plaintiffs have paid an *ad valorem* tax upon all their property subject to taxation, other than the property involved in this proceeding; and it is not contended that the property involved here was included in the property upon which an *ad valorem* tax has been paid. Hence, if the coal taken from the mines operated by plaintiffs is not subject to taxation in the manner provided for in this law, then a large per cent. of the property owned by plaintiffs situated in this state will escape taxation.

It is well settled that where an act of the Legislature is subject to two constructions, and to give it one construction would strike down the act as unconstitutional, and the other would uphold the statute, that construction should be given, if possible, which will sustain and uphold the statute, rather than the construction which would render it void. Mr. Justice Moody, speaking for the court, in *Home Savings Bank v. Des Moines,* 205 U. S. 510, 27 Sup. Ct. 572, 51 L. Ed. 901, said:

"Certainly such a purpose, against common justice and of doubtful constitutionality, ought not to be attributed to the law, if any other fair construction is possible."

The question involved here has been before both of the federal district courts within this state. The court for the Western district, presided over by Judge Cotteral, in the case of *M., K. & T. Ry. Co. v. Meyer, State Auditor* (D. C.) 204 Fed. 140, held that the taxes imposed by this statute were upon an instrumentality of the federal government, and that the same would

directly tend to burden and hinder the government in its policy and dealing with the Indian tribes, and were therefore invalid. From an examination of the opinion written by Judge Cotteral, it would indicate that he was misled by an excerpt from a decision by the Court of Appeals of Kentucky, cited in the opinion of this court in the case of *Binion v. Oklahoma Gas & Elec. Co.,* 28 Okla. 356, 114 Pac. 1096.

Campbell, District Judge for the Eastern District of Oklahoma, in the case of *Choctaw, Oklahoma & Gulf R. Co. v. John A. Harrison, Sheriff of Pittsburg County* (not for publication), in passing upon a question similar to the one involved here, held that, even if it be conceded that the plaintiffs, by virtue of the coal leases, become in any sense a federal agency, the tax in question, if it could be said to interfere with such agency in any respect, is at any rate too remote an interference to come within the implied constitutional prohibitions against such interference, and no express prohibition has been made by Congress, and concluded that the law was not invalid. The court's conclusion in that case is in harmony with the conclusion we have reached.

We are therefore of the opinion that the law in question does not impose a tax or burden upon any instrumentality of the federal government, as contended by plaintiffs, and it does not appear that the federal government would in any way be burdened or interfered with in its intercourse with the Choctaw and Chickasaw Tribes of Indians, but that said law provides for the assessment and payment of taxes upon the property of the plaintiffs in error, and that the statute requiring the same to be paid upon the gross receipts of the production of coal from the mines, after the amount of royalty has been paid or ascertained, as provided, simply provides a standard or means whereby the fair cash value of said property may be determined; and that said law is therefore not unconstitutional, but is valid.

The result of this holding requires an affirmance of the judgment of the trial court.

It is so ordered.

All the Justices concur.