### WEIR, Co. Treas., v. JAYBIRD MINING CO.

No. 14059—Opinion Filed Oct. 21, 1924.

Rehearing Denied Nov. 9, 1924.

1. **Taxation—Licenses—Taxation of Federal Agency—Liability of Private Property of Agent.**

The state has no power to levy an occupation tax upon the agency of the government nor to levy an income tax on the proceeds thereof, but the state has the power and authority to levy a property tax upon the private property of the agent when such property has a situs within the state.

2. **Same—Liability of Lessee's Ores Extracted from Restricted Indian Land.**

Where lead and zinc ores extracted from the lands of restricted Quapaw Indians are stored in the bins of the lessee and assessed for taxation on the day fixed by the laws of the state, such ores, being personalty and private property of the lessee, are not exempt from ad valorem taxation.

3. **Same—Gross Production Tax not on Federal Agency.**

The tax imposed by section 9814, Comp. Stat. 1921, is not upon a federal agency nor upon the right to exercise or operate a federal agency, but is upon the lessee's individual private property.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Ottawa County; S. C. Fullerton, Judge.

Action by the Jaybird Mining Company against Joe Weir, County Treasurer of Ottawa County, Okla. From judgment in favor of plaintiff, defendant brings error. Reversed.

Clifford W. King and Leon S. Hirsh, Asst. Attys. Gen., for the State.

A. L. Commons and John H. Venable, for plaintiff in error.

A. Scott Thompson, for defendant in error.

Opinion by PINKHAM, C. This is an appeal from a judgment of the district court of Ottawa county, Okla., in a cause wherein the Jaybird Mining Company, a corporation, was plaintiff, and the plaintiff in error, Joe Weir, county treasurer of Ottawa county, Okla., was defendant.

The Jaybird Mining Company (hereinafter called "the company") was the lessee of certain lands allotted to one Hum-bah-wat-tah Quapaw, a restricted Quapaw Indian, and, by virtue of said lease, had operated a lead and zinc mine upon said lands. The company paid to the State Auditor a gross production tax on ores produced and sold prior to June 30, 1921, but on January 1, 1921, had ores on hand, unsold, in mass, and the royalty interest of the Indian unsegregated, upon which the plaintiff in error (hereinafter called "county treasurer") assessed an ad valorem tax in the amount of $2,319.80. This tax was paid, under protest, by the company, and suit was instituted to recover same by virtue of the laws of the state of Oklahoma in such cases provided.

The company alleged, in its petition, that by the Act of Congress of March 2, 1895 (28 Stat. 907), the lands, of which it was lessee, were patented to the Indian under a 25-year restriction, and that, by Act of Congress of March 3, 1921 (41 Stat. 1225, 1248) the restrictions were further extended for an additional period of 25 years. It was further alleged that, by virtue of Act of Congress of June 7, 1897 (30 Stat. 72), the lands of Hum-bah-wat-tah Quapaw were leased to the company by direction and with the approval of the Secretary of the Interior, the owners of the land (the allottee's heirs) having been declared incompetent and incapable of managing said estate, and the Secretary of the Interior maintaining control through the Quapaw Indian Agency at Miami, Okla. Hence the company alleged that it was carrying out the terms of a federal agency in developing the mineral lands of the Indian wards of the federal government.

The petition then stated that on January 1, 1921, the ores in the bin on said lands were in mass, the royalty or equitable interest of the Indian not having been segregated or paid, the terms of the lease providing for payment of a royalty or percentage of the gross proceeds derived from the sale thereof. It alleged that the company had paid to the Auditor of the state of Oklahoma a gross production tax on the ores "so assessed when sold, and during the tax year in which same was produced and prior to June 30, 1921," but that the taxing officials of Ottawa county, Okla., assessed the

ores in the bins on January 1, 1921, for ad valorem taxation, and that such taxing officials caused such ore to be assessed an ad valorem tax in the amount of $2,319.80.

The company alleged that the taxing officials aforesaid were without authority of law to make such ad valorem assessment, that the tax had been paid under protest, and it prayed judgment for the recovery of such amounts so paid.

The county treasurer demurred to said petition, which demurrer, on hearing, was overruled. The county treasurer elected to stand on his demurrer, declined to plead further, and the court thereupon rendered judgment in favor of the company for the amount sued for and costs. From this judgment the county treasurer appeals to this court.

The one important question to be determined in this appeal is whether the company, being the lessee of restricted Indian land, is entitled to recover from the county treasurer the taxes paid by it under protest on the ores which it had extracted from the leased land during the year 1920, and had stored in its bins on the 1st day of January, 1921, by reason of the fact that the lands from which these ores were mined were restricted Quapaw Indian lands leased by and with the consent of the Secretary of the Interior.

It is the theory of the company that it was a federal agency, and as such its personal property was nontaxable by the state except as permitted by Act of Congress.

It is the theory of the county treasurer that the status of the company, the lessee of a restricted Indian, cannot be considered as that of such type of a federal instrumentality as to exempt such lessee's personal property from state taxation.

In the briefs of both parties numerous cases decided by this court and by the Supreme Court of the United States are cited in support of the conflicting propositions, and in some instances the same cases are relied upon by both the company and the county treasurer.

If the company operating under a departmental lease, is exempt from taxation upon its personal property—the ores in question—which it is admitted had been severed from the soil and stored in the bins of the company, and were in its exclusive control and possession on the day fixed by law for the assessment of property for taxes—it must be by virtue of some statute, state or federal.

All property of this state, whether real or personal, except such as is exempt, shall be subject to taxation, section 9574, Comp. Stat. 1921.

Section 9575, Comp Stat. 1921, enumerates the property that shall be exempt from taxation, but ore in bins is not included therein.

Section 9814, Comp. Stat. 1921, provides among other things that "oil in storage, asphalt, and ores bearing the minerals hereinbefore named, mined, produced, and on hand at the date as of which property is assessed for general and ad valorem taxation for any subsequent tax year shall be assessed and taxed as other property within the taxing district in which such property is situated at the time. * * *"

Under no statute of this state was the property involved in this case exempt from taxation.

By the Act of June 7, 1897 (30 Stat. L. 72), it is provided that:

"The allottees of land within the limits of the Quapaw agency, Indian Territory, are hereby authorized to lease their lands or any part thereof for a term not exceeding three years for farming or grazing purposes or ten years for mining or business purposes: and said allottees and their lessees and tenants shall have the right to employ such assistants, laborers, and help from time to time as they may deem necessary; provided, that whenever it shall be made to appear to the Secretary of the Interior that by reason of age or disability of any such allottee he cannot improve or manage his allotment properly and with benefit to himself the same may be leased in the discretion of the Secretary, upon such terms and conditions as shall be prescribed by him."

The lands in question were leased by the Secretary of the Interior to the company under the second proviso of the act.

Whatever the terms of the company's lease under the provisions of the act it seems to us clear that it does not either expressly or by necessary implication exempt from taxation the personal property of Quapaw Indians, or personal property of the lessee consisting of minerals severed from the land.

The power to tax is an attribute of sovereignty so vital to the existence of the state that it may be exercised without restriction unless expressly prohibited. Morse v. Board Comrs., 172 N. C. 419, 90 S. E. 441.

In Goudy v. Meath, 203 U. S. 146, 51 L. Ed. 130, it is said:

"His property, unless exempt, became subject to taxation in the same manner as prop-

erty belonging to other citizens and the rule of exemption for him must be the same as for other citizens; that is, that no exemption exists by implication but must be clearly manifested."

In the case of In re Skelton Lead & Zinc Co.'s Gross Production Tax for 1919. 81 Okla. 134. 197 Pac. 495, the exact proposition raised by the company in the case at bar was decided adversely to its contention. In that case it was held that:

"The tax imposed by chapter 39, Sess. Laws (Extra Session) 1916 (section 9814, Comp. Stat. 1921), is not upon said agency nor upon the rght to exercise or operate a federal agency, but is upon the lessee's individual private property."

In the case of Protest of Bendelari Gross Tax of 1919, 82 Okla. 97, 198 Pac. 606, this court held:

"No constitutional implications prohibit a state tax upon property of an agent of the government merely because it is the property of such agent."

Counsel for the company contended that the Supreme Court of the United States, in the case of State v. Gillespie, 257 U. S. 501, in effect denied the soundness of the ruling of the Skelton Case, and that no authority other than that case is required to sustain the company's proposition, which, as we understand it, is that the ores in question produced by the company of January 1, 1921. are exempt from any tax burden sought to be imposed by the state because the lease and lessee constitute a federal instrumentality determined by the national government as the means of carrying out its obligations to Quapaw Indians.

It is, we think, sufficient to say that nothing said in the case relied upon detracts from the decision in the Skelton Case with respect to the right of the state to impose an ad valorem tax upon personal property produced by a lessee of restricted Indian land where such property is found within the state on the day fixed by law for the assessment of property.

What the Gillespie Case decided was that the income accruing from property (the lease), which is exempt from taxation, may not be taxed by the state.

It is said in the opinion:

"The only question in the case is whether he . (the lessee) is liable to this kind of a tax."

The kind of a tax involved in the Gillespie Case was an income tax obviously distinct from an ad valorem tax on tangible private personal property.

To make it clear that the Gillespie Case was limited solely to "incomes" it is said in the concluding part of the opinion:

"Whether this property could be taxed in any other form or not it cannot be reached as profits or income from leases such as those before us."

The right of the state to impose taxes upon personal property having a situs within the state's limits, notwithstanding the fact that the title to the land from which minerals are taken was in the United States, was upheld in Forbes v. Gracey, 94 U. S. 762, in which case it was said by Mr. Justice Miller:

"The moment this ore becomes detached from the soil in which it is imbedded it becomes personal property, the ownership of which is in the man whose labor, capital and skill has discovered and developed the mine and extracted the ore or other mineral products. It is then free from any lien, claim, or title of the United States, and is rightly subject to taxation by the state as any other personal property is."

"Such an interest from early times has been held to be property distinct from the land itself; i. e., vendable. inheritable. and taxable." Elder v. Wood, 208 U. S. 226, 227.

In the case of Choctaw, etc., Ry. Co. v. Harrison, 235 U. S. 292, 59 L. Ed. 234, it is said in the opinion:

"But it is insisted that the statute rightly understood prescribes only an ad valorem imposition on the personal property owned by appellant—the coal at the pit's mouth— which is permissible according to many opinions of this court." Thomason v. Union Pacific Ry. Co., 9 Wall, 479; Union Pacific Ry. Co. v. Peniston, 18 Wall. 5; Central Pacific Ry. Co. v. California. 162 U. S. 91; Thomas v. Gay, 169 U. S. 264.

In Union Pacific Ry. Co. v. Peniston, and Thomas v. Gay, supra, it was held that a state or territory might properly levy a tax upon private property used under federal authority on Indian reservations.

The taxes here involved were not imposed upon the business of the lessee or upon the royalty received by the Indian, but upon the ore as personal property, which the company had extracted from the soil and had stored in its bins, and, as held in Thomas v. Gay, supra, "such a tax is too remote to be regarded as an interference with the legislative power of Congress."

Such a tax, we think, could in no way hamper the federal government in carrying out its duties to the Indian ward.

So far as the proposition that the Indian had an unsegregated interest in the ores is

concerned. it is stated in the company's petition that the terms of the lease gave no royalty interest in the Indian prior to the sale of ores in question; that the lease provided that the Indian should receive a percentage of the gross proceeds of the sale of the ore. It will be seen, therefore, that the title to the ore in the bins was completely in the company, and the company would be liable for the tax to the full value, and no deduction would be properly made for the undetermined interest that would accrue to the Indian from the proceeds of the sale when made by the company. In other words, there was no attempt to tax the royalty interest of the Indian. The Indian would receive his royalty, according to the allegation of the petition, when the ores were sold by the company.

We conclude that the taxes here involved were not upon the lease, or upon the occupation of the lessee company, or upon its income derived from the lease, but simply an ad valorem tax such as is imposed annually upon the property of all other citizens of the state pursuant to its laws, and that the judgment of the trial court overruling the demurrer of plaintiff in error and rendering judgment in favor of the Jaybird Mining Company in the sum of $2,357.60 should be reversed, and the cause remanded with directions to enter judgment sustaining the demurrer of the county treasurer, plaintiff in error herein.

By the Court: It is so ordered.