### TABER, Treas., v. INDIAN TERRITORY ILLUMINATING OIL CO.

No. 25794. March 12, 1935.

Rehearing Denied April 30, 1935.

Second Petition for Rehearing Denied May 12, 1936.

Guy L. Horton, Co. Atty., for plaintiff in error.

W. P. McGinnis, Fred M. Carter, Archibald Bonds, and Donald Prentice, for defendant in error.

RILEY, J. This is an appeal by the county treasurer of Payne county from a judgment rendered in favor of the defendant in an action commenced by it, hereinafter referred to as plaintiff, to recover certain taxes paid under protest.

The principal question is whether the property assessed and upon which the tax was levied is taxable by the state of Oklahoma or its political subdivisions.

There is also a question raised as to whether the remedy of plaintiff, if any it had, was by way of appeal from the county equalization board.

The tax levied was for the year 1933, and the plaintiff contends that the question of

68

whether said property was liable for taxes was, as to the year 1933, res adjudicata in that the same property, used for the same purpose, had been held exempt from taxes by a judgment of the district court of Payne county in an action involving taxes for the years 1931-1932, and that said judgment was not appealed from and necessarily decided the same question as here involved.

The property in question belonged to and was used by plaintiff in the development and operation of a departmental oil and gas lease owned by plaintiff and covering lands of a restricted Pawnee Indian allottee known as the Wilson-Moore land.

Plaintiff made its return to the county assessor showing that it had on said land certain equipment, such as one pumping unit, one tank, certain casing, tubing, etc., of the total value of $1,078.03, in and around exhausted oil wells, which it conceded was taxable, and other property on said land consisting of one dwelling, portable, one garage, one tool house, engines, pump, water well equipment, tanks, derricks, casing, tubing, rods, pipe lines, and one "trailer truck" of the aggregate value of $15,869.23, claimed to have been used in and around producing wells on restricted Indian lands, and claimed as exempt from taxation.

Plaintiff alleged in its petition that the county assessor accepted said list and schedule as rendered and assessed the property for taxation for the year 1933-34 as of the value of $1,078.07, exempting the property listed as being used in and about producing wells. That thereafter, and without notice to plaintiff, the value of plaintiff's property was increased on the tax rolls to $16,947.29, thus including the property claimed as exempt, and that such increase was not made by the county board of equalization; that no notice of such increase was given plaintiff, and it had no knowledge thereof until January, 1934, when the taxes became due and payable, and, as to the property claimed to be exempt, were paid under protest. That at the time plaintiff discovered the increase the Payne county board of equalization had long since adjourned, and that plaintiff had no opportunity to appear before said board and protest the increase, and if denied relief there, to appeal as provided by law.

It was also alleged that on February 24, 1933, the district court of Payne county rendered a judgment holding said property exempt from taxation for the year 1932-33,

and that said judgment became final, and that there had been no change in the use of same, and that said judgment was res adjudicata as to the attempted assessment thereof for the year 1933-34.

A copy of said judgment was attached to the petition and made a part thereof.

Demurrer to the petition being overruled, defendant answered by general denial.

Trial was had upon the issues, resulting in a judgment for plaintiff, and defendant appeals.

The trial court, while holding the property exempt under the evidence, refused to hold the question res adjudicata.

It may be said that there is conflict in the authorities on this question even where it is conceded that the facts are identical.

But in a case of this kind it is clear that the trial court was correct in its ruling on the question. It must be borne in mind that the theory of plaintiff was that property owned by it and located on restricted Indian land which had in fact been used in the past in connection with the operation of producing wells, but which were no longer producing oil and gas, was taxable. That is, that the derricks and equipment of "abandoned" wells are taxable. It can be readily seen that, under the issues joined in this case, the defendant could, if the facts warranted, have shown that many of the wells had been abandoned and that the status of the derricks and equipment in and about such wells had been changed in the course of one year. Unless it be conceded that the facts were the same, the rule of res adjudicata would not apply even in those jurisdictions where the rule prevailed.

It is contended that the court erred in holding exempt from taxation that part of plaintiff's property necessary and in fact used in and about the producing wells.

The land from which the oil was produced is restricted Indian land, not located in Osage county, and there could be no gross production tax collected, and plaintiff's property used in connection therewith could not be exempt under the "in lieu" provision of the gross production tax laws of the state.

We are bound by the holding of the Supreme Court of the United States in Gillespie v. State, 257 U. S. 501, 66 L. Ed. 338; Jaybird Mining Co. v. Weir, Co. Treas., 271 U. S. 609, 70 L. Ed. 1112.

It is generally held that federal instrumentalities are not subject to a state tax. This rule has been recognized since the decision in McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579.

In the Gillespie Case, supra, Gillespie was a lessee of restricted Indian lands. It was sought to enforce a tax on the net income derived by lessee from the sale of his share of oil and gas received under his leases. In the opinion it is stated:

"It is agreed that the lessee was an instrumentality used by the United States in carrying out duties to the Indians that it had assumed, and that the only question in the case is whether he is liable to this kind of tax."

After quoting from Indian Terr. Ill. Oil Co. v. Oklahoma, 240 U. S. 530, the following:

"A tax upon the leases is a tax upon the power to make them, and could be used to destroy the power to make them,"

—it is said:

"The step from this to the invalidity of the tax upon income from the leases is not long."

In the Jaybird Mining Case, supra, the mining company had and was operating a mining lease on restricted Indian land. It was therein said:

"The lessee is an agency or instrumentality employed by the government for the development and use of the restricted land and to mine ores therefrom for the benefit of its Indian wards."

And:

"It is elementary that the federal government in all its activities is independent of state control. This rule is broadly applied; and, without congressional consent, no federal agency or instrumentality can be taxed by state authority."

If the lessee is an instrumentality employed by the government for the development and use of the restricted Indian land, certainly the equipment used by the lessee in so doing is so essentially connected with such agency or instrumentality as to be a part thereof.

This being true, such federal agency or instrumentality cannot be taxed by state authority without congressional consent. Such consent has not been given, and the inability of the state to tax same, no matter how reasonable, or how universal and undiscriminating, is well established.

Furthermore, section 6 of the lease provides:

"* * * And all sums due as royalty shall be a lien on all improvements, tools, movable machinery and all other personal chattels used in operating said property, and upon all of the unsold oil obtained from the land herein leased, as security for payment of said royalty."

The power to tax would carry with it the power to enforce the tax by sale of the property. and thus interfere with the lien in favor of the lessor.

The lease also provides:

"* * * The lessee shall not remove therefrom any buildings or permanent improvements erected thereon during the said term by the said lessee, but said buildings and improvements shall remain a part of said land and become the property of the owner of the land as a part of the consideration for this lease, excepting the tools, derricks, boilers, boiler houses, pipe lines, pumping and drilling outfits, tanks, engines, and machinery, and the casing of all dry or exhausted wells, which shall remain the property of the lessee and may be removed at any time prior to 60 days after the termination of the lease by forfeiture or otherwise. * * *"

Therefore the garage and tool house, and possibly the dwelling, though listed as "portable", when placed upon the premises became the property of the owner of the land as a part of the consideration for the lease, and was not subject to taxation.

It is suggested that the property should be held liable to taxation under the rule announced in Thomas v. Gay, 169 U. S. 264, 42 L. Ed. 740; Wagoner v. Evans, 170 U. S. 588, 42 L. Ed. 1154, and other cases of a similar nature. These cases were doubtless considered in Jaybird Mining Co. v. Weir, supra, since they were cited by Mr. Justice Brandeis in his dissenting opinion.

Thomas v. Gay, supra, and many of the cases cited by defendant herein were cited by the author of the opinion in Weir v. Jaybird Mining Co., 104 Okla. 271, 232 P. 425. If ore belonging to the lessee after it had been extracted from the restricted lands in the possession of the lessee and stored in bin, and clearly personal property under the law, was not taxable because the lessee was a federal agency or instrumentality employed by the government for the development and use of restricted Indian land, and for the benefit of its Indian wards, we would be reluctant to hold that its ma-

chinery, tools, and other necessary equipment used in the production of the oil would be taxable, although it is said by way of dicta in Re Skelton, etc., 81 Okla. 134, 197 P. 495, that the "plants, mills, smelters and machinery * * * are subject to the same rate of property tax which other property bears." But that case was decided before the Gillespie Case, supra, and the Jaybird Mining Co. Case, supra.

As we understand the two latter cases, they, and particularly the Jaybird Mining Co. Case, in effect, overrule In re Skelton, etc., supra.

It is contended that plaintiff herein has not availed itself of the proper remedy in that it should have appeared before the board of equalization as provided in section 12646, O. S. 1931, as amended by section 6, ch. 115, S. L. 1933.

The contention is entirely without merit. Plaintiff alleged, and the evidence shows, that it had no notice whatever of the change in the assessment until long after the first Monday in June, 1933, when by law the sessions of the equalization board must close under said section, as amended.

As late as October 25, 1933, the county assessor of Payne county, by letter, in response to an inquiry from plaintiff, informed plaintiff that the assessed value of plaintiff's property in the particular township in which the land was located was $1,078.03, the exact amount in which it was rendered.

It also appears reasonably certain that the change in the assessment was not made until late in August, 1933, and not then by the board of equalization, but by the county assessor under the direction of the county attorney. No chance whatever was given plaintiff to present its grievance to the board of equalization.

If the county attorney did as a matter of fact instruct the county assessor to make the change long after he knew the board of equalization had adjourned finally, and when he knew the board could not legally hold a session, he should not be heard to urge the advantage thus sought to be gained.

Judgment affirmed.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.

WELCH, J. (dissenting). I agree with the rule stated in paragraph 4 of the syllabus that "without congressional consent no federal agency or instrumentality can be taxed by state authority." That the instrumentality itself cannot be taxed is so held by the authorities cited in the majority opinion, and by the more recent case of State of Oklahoma v. Barnsdall Refineries, Inc., et al., 296 U. S. 521, 56 S. Ct. 340, decided by the Supreme Court of the United States at the October term, 1935, affirming the decision of this court in Barnsdall Refineries v. Oklahoma Tax Commission, 171 Okla. 145, 41 P. (2d) 918.

But I cannot agree with the rule stated in paragraph 3 of the syllabus that "personal property actually used by a lessee in the production of oil and gas or either from restricted Indian land is a part of a federal agency or instrumentality."

By joining the rules stated in these two paragraphs of the syllabus, the majority opinion is made to hold that tangible personal property, otherwise subject to bearing its just portion of the burden of taxation, is rendered nontaxable or exempt from taxation merely because the owner used it in carrying out a contract with the federal government, or a contract or lease in which the government has an interest.

Such holding has never been approved by the Supreme Court of the United States, nor heretofore by this court. Upon the contrary, both courts have declared otherwise, and I think we should not now depart therefrom.

In the early case of In re Indian Territory Illuminating Oil Co., 43 Okla. 307, 142 P. 997, this court stated the rule to be that the state had the right to tax property in the state, although the owner of the property might use the same in the development of leases on restricted Indian land, and speaking of the company there involved, which is the same company involved in the case at bar, the court said:

"Primarily this company is not a federal agency. It is a corporation for profit, incorporated under the laws of the state of New Jersey, and doing business in the state of Oklahoma, with whom the federal government finds it convenient or profitable to deal in carrying out its policy toward the Osage Tribe of Indians. What the state is attempting to do is to tax the property of this corporation within its borders. This certainly is a proper exercise of the taxing power of the state. In re Assess. W. U. Tel. Co., 35 Okla. 626, 130 P. 565. Borrowing the language of Mr. Justice Holmes, in Baltimore Shipbuilding Co. v. Baltimore, 195 U. S. 375, 25 Sup. Ct. 50, 49 L. Ed. 242:

" 'It seems to us extravagant to say that an independent private corporation for gain, created by a state, is exempt from state taxation, either in its corporate person, or its property, because it is employed by the United States even if the work . for which it is employed is important and takes much of its time.'

"As the authorities sustaining this view of the case are collected in · McAlester-Edwards Coal Co. v. Trapp, 43 Okla. 510, 141 P. 794, it will be sufficient to refer to that case as. controlling on this phase of the case at bar."

In the McAlester-Edwards Case, referred to, it was held that the gross revenue tax imposed on lessee's share of coal was not a tax upon the governmental instrumentality.

In the case of In re Skelton Lead & Zinc Co., 81 Okla. 134, 197 P. 495, this court considered the taxable status of property owned by the lessee and used in operating under lease upon restricted Indian lands, and it was held in the 15th paragraph of the syllabus that:

"The mills, plants, machinery, equipments, and all other property, being exclusively the private property of the lessee, and having a situs within this state, and not being exempt by law, are subject to state taxation. * * *"

The opinion in that case by Chief Justice Harrison analyzes most of the authorities which I have referred to, and the conclusion there seems to me to be contrary to the majority conclusion here. I think the reasoning in that case is unanswerable, demonstrating as it does the "wide distinction between the taxation of the agency itself and the taxation of the private property of the agent." And that opinion states this conclusion in these words:

"A state has power to impose a property tax upon the private property of a federal agent."

In the case of Protest of Bendelari, 82 Okla. 97, 198 P. 606, this court, in an opinion by Mr. Justice N. E. McNeill, quoted at length from Union Pac. Railway Co. v. Peniston, 18 Wall. 5, 21 L. Ed. 787; Thomas v. Gay, 169 U. S. 264, 42 L. Ed. 740; Central Pac. Railway Co. v. California, 162 U. S. 91, 40 L. Ed. 903, and Choctaw, O. & G. Ry. Co. v. Harrison, 235 U. S. 292, 59 L. Ed. 234, observing that the last-mentioned opinion recognized the right to tax the tangible property of the lessee upon an ad valorem basis. and held in paragraphs 1, 3, and 4 of the syllabus as follows:

"Section 7302, Revised Laws 1910, provides 'all property in this state, whether real or personal, including the property of corporations, banks, and bankers, except such as is exempt, shall be subject to taxation.'

"No constitutional implications prohibit a state tax upon the property of an agent of the government, merely because it is the property of such agent.

"Although a corporation may be an agent of the United States, the state may levy a property tax upon its property, and, when Congress has not interposed to protect said property from state taxation, said taxation is not obnoxious to that objection."

The majority opinion in the case at bar states:

"We are bound by the holding of the Supreme Court of the United States in Gillespie v. State, 257 U. S. 501, 66 L. Ed. 338; Jaybird Mining Co. v. Weir, 271 U. S. 609, 70 L. Ed. 1112."

And later in the opinion it is said:

"As we understand the two latter cases, they and particularly the Jaybird Mining Company Case, in effect, overrule In re Skelton Lead & Zinc Co., supra."

I do not think these decisions are controlling or applicable, nor that they in effect overrule the Skelton Case, 81 Okla. 134, 197 P. 495.

In the Gillespie Case there was not involved any ad valorem tax question. There was involved the income tax law.

In the Jaybird Mining Company Case there was involved an ad valorem tax, but not upon the private property of the lessee used upon the lease. It was there sought to tax the ore in possession of the lessee, which was taken from restricted Indian lands and held by the lessee on the premises on the tax assessment date prior to division between the lessee and the lessor.

Those decisions are authority for the rules therein stated, but neither case deals with or in any manner considers separate private property of the lessee used in connection with or upon the lease, and neither case contains any reasoning or states any rule relative to the taxable status of any such private property. I therefore cannot agree that those decisions are controlling here or that they in effect overrule the Skelton Case, supra. Other decisions of the Supreme Court of the United States point directly to a conclusion contrary to the majority opinion, as I shall undertake to demonstrate.

The gist of the contention here made is that the property involved is exempt from taxation because, to quote from the brief,

"Taxation thereof would constitute a tax upon and interference with a governmental agency in the performance of its governmental functions."

But an ad valorem tax on the private property of a contractor or lessee is not a tax on the governmental agency itself, and such private property is taxable though used by the contractor to carry out his contract or used by the lessee on the premises.

It was so held in Thomas v. Gay, 169 U. S. 264, 42 L. Ed. 740; Wagoner v. Evans, 170 U. S. 588, 42 L. Ed. 1154; Baltimore Shipbuilding Co. v. Baltimore, 195 U. S. 375, 49 L. Ed. 242; Montana Catholic Missions v. Missoula County, 200 U. S. 119, 50 L. Ed. 398; Alward v. Johnson, 282 U. S. 509, 75 L. Ed. 496, and Gromer v. Standard Dredging Co., 224 U. S. 362, 56 L. Ed. 801; and the lessee's part of the oil itself, after segregation, was held subject to state taxation in I. T. I. O. Co. v. Board of Equalization of Tulsa County (I. T. I. O. Co. v. Board of County Commissioners of Payne County) 288 U. S. 325, 77 L. Ed. 812.

The majority opinion in the case at bar further states:

"It is generally held that federal instrumentalities are not subject to a state tax. This rule has been recognized since the decision in McColloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579."

I agree with that rule, but it seems to me the majority opinion wholly fails to note the distinction between a tax **directly upon a federal instrumentality** and an ad valorem tax **merely upon the property of the federal agent.** The former may not be imposed, while the latter may be, and the distinction between the two is clearly drawn and repeatedly referred to in the decisions of the Supreme Court of the United States.

In McCulloch v. Maryland, cited in the majority opinion, such distinction is noted by the Chief Justice. And in Union Pacific Ry. Co. v. Peniston, supra, the court said:

"This distinction so clearly drawn in the earlier decisions, between a tax on the property of a governmental agent, and a tax upon the action of such agent, or upon his right to be, has ever since been recognized. All state taxation which does not impair the agent's efficiency in the discharge of his duties to the government has been sustained when challenged, and a tax upon his property generally has not been regarded as beyond the power of a state to impose."

And in Thomson v. Union Pacific Railroad Co., 76 U. S. 579, 19 L. Ed. 792, where upon this point it was said:

"But we think there is a clear distinction between the means employed by the government and the property of agents employed by the government. Taxation of the agency is taxation of the means; taxation of the property of the agent is not always, or generally, taxation of the means. No one questions that the power to tax all property, business and persons, within their respective limits, is original in the states and has never been surrendered."

And in Susquehanna Power Co. v. State Tax Commission of Maryland, 283 U. S. 291, 75 L. Ed. 1042, it is said:

"The distinction has long been taken between a privilege or franchise granted by the government to a private corporation in order to effect some governmental purpose, and the property employed by the grantee in the exercise of the privilege, but for private business advantage. The distinction was pointed out by Chief Justice Marshall, in McCulloch v. Maryland, 4 Wheat. 316, 435, 4 L. Ed. 579, 608, and in Osborn v. Bank of United States, 9 Wheat. 738, 867, 6 L. Ed. 204, 234; see Union P. R. Co. v. Peniston, 18 Wall. 5, 34-37, 21 L. Ed. 787, 792-794. It has been followed without departure, and property so owned and used has uniformly been held to be subject to state taxation."

And in I. T. I. O. Co. v. Board of Equalization, 288 U. S. 325, 77 L. Ed. 812, it is said:

"There is a recognized distinction between a nondiscriminatory tax upon the property of an agent of the government, albeit the property used in, or as relation to, the business of the agency, * * * and a tax which is deemed to impose a direct burden upon the exertion of governmental powers."

Other federal decisions noting this distinction are: Osborn v. Bank, 9 Wheat. (U. S.) 738, 6 L. Ed. 264, 234; First National Bank v. Commonwealth of Kentucky, 76 U. S. 353, 19 L. Ed. 701, Union Pac. Railroad v. Peniston, 18 Wall. 5, 21 L. Ed. 787; New York Lake Erie & W. Railroad Co. v. Pennsylvania, 158 U. S. 431, 39 L. Ed. 1043; Central Railroad Co. v. State of California, 162 U. S. 91, 40 L. Ed. 903; Gromer v. Standard Dredging Co., 224 U. S. 363, 56 L. Ed. 801; Choctaw, O. & G. R. Co. v. Harrison, 235 U. S. 292, 59 L. Ed. 234; Ackerlind v. United States, 240 U. S. 531, 60 L. Ed. 783; Choctaw, O. & G. R. Co. v. Mackey, 256 U. S. 531, 65 L. Ed. 1076; Fort Leavenworth Railroad Co. v. Lowe, 114 U. S. 525, 29 L. Ed. 264; Western Union v. Attorney General, 125 U. S. 530, 31 L. Ed. 790.

Thus it appears that the United States Supreme Court has noticed this distinction and made forceful reference to it every time the subject-matter has been important, and I insist that this court should likewise observe the distinction.

We should not lose sight of the reason for, and the foundation of, the rule that federal agents or instrumentalities are exempt from state taxation. In Union Pacific Railroad Co. v. Peniston, 18 Wall. 5, 21 L. Ed. 787, it was said:

"It is, therefore, manifest that exemption of federal agencies from state taxation is dependent, not upon the nature of the agents, or upon the mode of their constitution, or upon the fact that they are agents, but upon the effect of the tax; that is, upon the question whether the tax does in truth deprive them of power to serve the government as they were intended to serve it, or does hinder the efficient exercise of their power. A tax upon their property has no such necessary effect. It leaves them free to discharge the duties they have undertaken to perform."

And in First National Bank of Louisville v. Commonwealth of Kentucky, 9 Wall. 353, 19 L. Ed. 701, 703, after discussing the rule or principle of exempting federal instrumentalities or agents from state legislation and taxation, it was said:

"The principle we are discussing has its limitation, a limitation growing out of the necessity on which the principle itself is founded. That limitation is that the agencies of the federal government are only exempted from state legislation, so far as that legislation may interfere with, or impair their efficiency in performing the functions by which they are designed to serve that government. Any other rule would convert a principle founded alone in the necessity of securing to the government of the United States the means of exercising its legitimate powers, into an unauthorized and unjustifiable invasion of the rights of the states."

And in Thomas v. Gay, 169 U. S. 264, 42 L. Ed. 740, 744, this expression was used:

"It is not perceived that local taxation, by a state or territory, of property of others than Indians would be an interference with congressional power."

And in Indian Territory Illuminating Oil Co. v. Board of Equalization, 288 U. S. 325, 77 L. Ed. 812, 815, dealing with a claim of exemption by the company as oil lessee of Indian lands, this language was used:

"Such immunity as petitioner enjoyed as a governmental instrumentality inhered in

its operations as such, and being for the protection of the government in its function extended no further than was necessary for that purpose."

And in Willcuts v. Bunn, 282 U. S. 216, 75 L. Ed. 304, 307, it was said:

"No constitutional implications prohibit a nondiscriminatory tax upon the property of an agent of government merely because it is the property of such an agent and used in the conduct of the agent's operations and necessary for the agency."

And in Thomson v. Union Pacific Railroad Co., 76 U. S. 579, 19 L. Ed. 792, 798, prominence was given to the question whether there had been federal intervention in reference to the questioned tax, and this language was used:

"But it will be safe to conclude, in general, in reference to persons and state corporations employed in government service, that when Congress has not interposed to protect their property from state taxation, such taxation is not obnoxious to that objection."

This quoted principle was expressly reaffirmed in Central Railroad Co. v. State of California, 162 U. S. 91, 40 L. Ed. 903.

And in Western Union Telegraph Co. v. Attorney General of the Commonwealth of Massachussetts, 125 U. S. 530, 31 L. Ed. 790, it was held as stated in headnote 3:

"Agencies of the federal government are only exempt from state taxation so far as such taxation may interfere with or impair their efficiency in performing the functions by which they serve the government."

And in Wagoner v. Evans, 170 U. S. 588, 42 L. Ed. 1154, where it was contended, as it is contended in the case at bar, that the property tax, if permitted, would interfere with the federal leasing of the Indian lands, the court said that the contention "seems to us too indirect and far-fetched an incident to affect our conclusion."

And in Baltimore Shipbuilding D. D. Co. v. Baltimore, 195 U. S. 375, 49 L. Ed. 242, it was said by Justice Holmes that it seems to the court:

"* * * extravagant to say that an independent private corporation for gain, created by a state, is exempt from state taxation, either in its corporate person or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time. Thomson v. Union P. R. Co., 9 Wall. 579, 19 L. Ed. 792; Union P. R. Co. v. Peniston, 18 Wall. 5, 21 L. Ed. 787."

Similar expressions occur in all of the other federal cases cited, and from all of the authorities it seems clear to me that while there is a well-defined exemption of federal instrumentalities or agencies from state taxation, it is based upon the necessity of preserving the federal instrumentality and its efficiency in aid of the government, and does not extend any further than that which is necessary to preserve the agency or instrumentality and keep its efficiency unimpaired, and that state taxation which does not impair such efficiency is always upheld, and that a mere ad valorem tax upon tangible property is quite generally upheld by this court and the Supreme Court of the United States.

I, therefore, must conclude that a reasonable ad valorem tax on such property is fully sustained by the decided cases. There is nothing whatever in the record to indicate that the payment of this small ad valorem tax would in any manner impair the efficiency of the Indian Territory Illuminating Oil Company in acting as lessee of Indian oil lands, or in any manner interfere with the policy and practice of the government in leasing lands for oil development.

The majority opinion infers that the property here involved might be sold as under a tax lien, but that, I take it, is mere error of expression, for no lien exists against personal property for the tax thereon, as does exist against real estate by statute.

The majority opinion refers to that portion of the lease preventing removal of improvements, and in effect making them the property of the lessor. It seems that this court is committed to the rule that such provision would not exempt any of the property here involved from taxation while held and controlled by the lessee during the life of the lease.

In Central Coal & Lumber Co. v. Board of Equalization of LeFlore County, 70 Okla. 131, 173 P. 442, it was held in paragraph 2 of the syllabus:

"Improvements placed upon Indian land not subject to taxation, under the terms of a lease expiring at a specific time, which provides that such improvements should not be removed, but remain upon and become the property of the lessor as a part of the consideration for the lease, but gives the lessee control and ownership during the life of the lease, are personal property and subject to taxation until the lease expires."

I, therefore, cannot concur in the majority opinion, and respectfully dissent.

I am authorized to say that Mr. Justice BAYLESS and Mr. Justice CORN concur in this dissent.